[No. 9456. Department Two. January 4, 1912.]

Bo SWEENEY, *Respondent*, v. LEWIS CONSTRUCTION COMPANY et al., *Appellants*.[1]

CORPORATIONS—REPRESENTATIONS—CONTRACT—INDIVIDUAL LIABILITY OF OFFICERS. The evidence sufficiently shows that a contract was made by the plaintiff direct with a corporation, rather than with its officers individually, where negotiations were carried on in the name of the corporation and plaintiff's offer and letters were addressed to it.

CONTRACTS—REGRADE OF LOTS—WAIVER OF DAMAGES—CONSTRUCTION. A contract waiving damages from a regrade about to be made, contemplates only future damages, where there was evidence that no substantial damages had theretofore been sustained and no claim had been made therefor.

[1]Reported in 119 Pac. 1108.

CONTRACTS—REGRADE OF LOTS—BREACH—MEASURE OF DAMAGES. Under a contract waiving damages to property from a contemplated regrade, to be completed within a specified time, on breach of the contract upon its becoming impossible to complete the regrade within the time, the work being abandoned, measure of damages to be recovered by the property owners is the difference in the value of the lots before the commencing of the work and their value when work was suspended, eliminating changes in market values, together with damages to buildings and loss of rentals; and not the cost of completing the work irrespective of the value of the property.

Appeal from a judgment of the superior court for King county, Yakey, J., entered September 12, 1910, upon findings in favor of the plaintiff, in an action for breach of contract, after a trial before the court without a jury. Reversed.

*Harold Preston, Leander T. Turner,* and *Sandford C. Rose,* for appellants.

*Dorr & Hadley,* for respondent.

CROW, J.—Action by Bo Sweeney against Lewis Construction Company, a corporation, W. H. Lewis, and Charles S. Wiley, to recover damages for breach of an alleged contract. The trial court made findings and entered judgment in plaintiff's favor for $30,500. The defendants have appealed.

After trial, and prior to entry of judgment, the death of Charles S. Wiley was suggested. Thereupon Clifford Wiley, his administrator, was substituted as party defendant, and now joins in the prosecution of this appeal. The respondent, Bo Sweeney, is the owner of four lots in block 62, of Kidd's addition to the city of Seattle. These lots, located on what is known as North Beacon hill, were at so great an elevation that it was considered that they and all other property in that immediate neighborhood would be improved and advanced in value by regrading to a lower level. The appellant W. H. Lewis, and Charles S. Wiley, now deceased, purchased a number of lots in the same locality, and about the year 1903 had a contract with the Seattle & Montana Rail-

way Company to fill tide lands, which contract they were performing by sluicing earth from their Beacon hill lots and other property. In May, 1904, Lewis, Wiley and L. T. Turner, their attorney, organized the appellant corporation, Lewis Construction Company, with a capital stock of $2,000, divided into one hundred shares of the par value of $20 each. Lewis and Wiley subscribed for forty-nine shares each, and Turner subscribed and paid for two shares. Lewis and Wiley paid their stock subscription by transferring to the corporation their sluicing plant, which was of a greater value than $2,000. Thereafter the sluicing and regrading was done by the Lewis Construction Company, under a subcontract from Lewis and Wiley, who collected fifteen cents per cubic yard from the railroad company and paid the construction company from five to ten cents per cubic yard for doing the work. About the same time, Lewis and Wiley organized another corporation, known as the Beacon Place company, with a capital stock of $12,000, and in payment of their stock subscriptions transferred to it their North Beacon hill real estate of that value.

The regrading operations on North Beacon hill extended over platted streets and private property of other parties in the neighborhood. For this purpose it became necessary to obtain permits from the city and owners of abutting property. At first permits and licenses, together with the right to use city water, were obtained in the name of Lewis, but later in the name of the Lewis Construction Company, which in its operations, without the formality of any written transfer, used those obtained by Lewis. That portion of North Beacon hill involved in this action had platted streets running east and west, named from north to south as follows: Lane street, Dearborn street, Charles street, and Norman street. A portion of Dearborn street was condemned about the time the improvements here involved were under consideration. There were also cross-avenues running north and south, named from west to east as follows: Tenth avenue

south, Eleventh avenue south, and Twelfth avenue south. Respondent's lots fronted on the south side of Charles street and the west side of Eleventh avenue south, near the center of the district.

On February 15, 1906, Ordinance No. 13,320 of the city of Seattle was approved. This ordinance provided for widening, extending and establishing Dearborn street, for changing and lowering its grade, the grade of Tenth avenue south, and the grades of other streets, and for condemning and damaging property necessary for these purposes. While this ordinance affected other streets and avenues, it did not establish any grade for Charles street, Eleventh avenue south, or Twelfth avenue south. The grades thus established for Dearborn street and Tenth avenue south, within the district mentioned, called for cuts of at least one hundred feet—at some points more, at others less. We need not give exact figures. The cuts were to be very deep.

About the time these street grades were adopted, there was a general discussion and consideration by city officials and property owners, including parties to this action, of the advisability of a general regrade of the North Beacon hill district. Appellants were desirous of lowering the level of property owned by the Beacon Place Company, and also of obtaining earth to be used by the Lewis Construction Company in filling the tide lands. Respondent also seems to have been desirous of having the grade of his lots and the adjoining streets lowered to correspond with the adopted grades of Dearborn street and Tenth avenue south, if done without expense to him and within a definite time. Considerable negotiation occurred between respondent and Lewis and Wiley, officers of the appellant Lewis Construction Company. The construction company submitted and suggested to respondent written offers running to it from him. None of them were satisfactory to respondent. On April 16, 1906, respondent prepared and delivered to appellant Lewis Construction Company the following proposal, which he now

claims is the contract on the breach of which this action is predicated:

"Lewis Construction Co.,                    April 16, 1906.
    "Seattle, Washington.

"Gentlemen: Replying to your communication of the 12th inst., I wish to say that I am desirous that Charles street between Tenth and Twelfth avenues be reduced to the same grade as Dearborn street, as provided for in Ordinance No. 13,320 and also of Eleventh avenue to the same grade as Tenth avenue, as provided in said Ordinance No. 13,320. I therefore wish to advise you that if the same shall be reduced to grade as above indicated, and that my lots numbered one, four, five, and the north one-half of lot two, and the south one-half of lot three, in block sixty-two, Kidd's addition to the city of Seattle, are at the same time reduced to the same grade, as the streets above named, I shall and will waive all claims for damages to said property; provided, however, that said grading is done and completed on or before January the first, 1907. Yours truly,     Bo Sweeney."

This offer was not acceptable to the appellant construction company, to which respondent was to make no payments for lowering the grade; but, a few days later, Mr. Lewis telephoned respondent that he thought it would be satisfactory. Immediately thereafter the appellant construction company entered upon respondent's lots and the adjoining streets, and by sluicing lowered their grade to a considerable extent, but far short of the grades of Dearborn street and Tenth avenue south. Respondent had some small tenement houses upon his lots, which he claims were so completely damaged by the regrading as to render them worthless and unfit for occupancy. Shortly before January 1, 1907, the appellant construction company ceased the work of regrading, and thereafter refused to continue. Respondent prosecuted this action for the breach of the contract, not only against the appellant construction company, but also against Lewis and Wiley individually, his contention being that he never knew of the existence of the construction company; that he understood he was dealing with Lewis and Wiley, and that he

looked to them only. Appellants claim he dealt with the corporation. The trial judge substantially found the corporation was a pretense and subterfuge; that appellants Lewis and Wiley were the contracting parties, and entered judgment against them as well as against the corporation.

The record is voluminous, and we cannot, within the limits of an opinion of reasonable length, state the evidence in detail. We conclude, however, that respondent was dealing with the corporation only. His letter was addressed to it. The proposals previously drafted by it and submitted to him for his signature were also addressed to the corporation. Attached to one of them was a blank form of acceptance, reading as follows: "The foregoing is acceptable to us and we agree to the conditions therein contained.

"Lewis Construction Company,
"By................, President."

It clearly appears from the evidence that the Lewis Construction Company was regularly incorporated under the laws of this state; that its stock was fully subscribed, paid and issued; that its articles of incorporation were of record in the office of the auditor of King county; that a list of its officers was also certified to and filed with the county auditor; that permits were granted it by the city of Seattle; and that it did the regrading on North Beacon hill at all times after its incorporation. While it is true that respondent talked with the individuals Lewis and Wiley, they were officers of the corporation, which could act only through them. The respondent could not talk to the entity known as a corporation. Lewis and Wiley claim they represented the corporation as its officers. Every writing that passed between the parties prior to the commencement of the work mentioned the corporation as the contemplated contracting party. The respondent himself prepared and addressed the identical letter on which he predicates this action. The evidence shows him to be an attorney of active practice. The name used by him in addressing his letter should have chal-

lenged his attention. There is no evidence of any investigation on his part as to who constituted the Lewis Construction Company, or whether it was a corporation or partnership. Respondent's testimony was that he gave the matter no thought. It was his place to give it thought, and to know the party with whom he was dealing. There is no suggestion in the evidence that Lewis and Wiley, or either of them, attempted to deceive him or in any way perpetrate a fraud upon him by inducing him to contract with the corporation, under the impression that he was contracting with them as individuals. It might be that the corporation would make a contract which the individuals would not make. It is suggested that the appellants Lewis and Wiley are also lawyers, but that fact cannot change respondent's situation. He is predicating his action on an alleged written contract drawn by himself, addressed to the corporation and accepted by it. The evidence is insufficient to hold Lewis and Wiley to individual liability. As to them, the action should have been dismissed.

It is apparent the partial work of regrading respondent's lots was done in pursuance of permission granted by his letter of April 16, 1906. Whether the proposal therein contained was followed by such a complete acceptance by the appellant corporation as to impose upon it an unconditional obligation to grade the lots to the depth mentioned by January 1, 1907, is sharply contested. We think sufficient acceptance was shown on appellants' part to complete a contract, but that the vital questions on this appeal are, (1) how should that contract be construed, and (2) what should be the measure of any damages respondent may have sustained.

There is some dispute as to what damages were to be waived, whether past, future, or both. Respondent contends appellants had theretofore damaged him by work done without his license or permission, and that the contract was for a waiver of his claim for those as well as future damages. Appellants insist no substantial damages had theretofore been

sustained by respondent; that he had made no claim for past damages, and that they were neither discussed nor mentioned during the preliminary negotiations. From the evidence we conclude that future damages only were contemplated in the waiver.

The appellants introduced evidence sufficient to show that it was impossible for the construction company to complete the grade to the contemplated level within the time named, for the reason that no improvement of Dearborn street or Tenth avenue south was ordered prior to January 1, 1907; that no plans for a general regrading of North Beacon hill were perfected; that a city water main was laid in Twelfth avenue south; that if respondent's lots, Charles street, and Eleventh avenue south, had been lowered to the contemplated depth, the entire eastern portion of North Beacon hill, including Twelfth avenue south, would have been deprived of support, and by an avalanche would have been precipitated on respondent's property, destroying the water mains and damaging not only respondent's lots but all of that locality. Respondent contends appellants knew, when making the contract, that its full performance might become impossible, but that they failed to communicate that knowledge to him. We fail to understand why he did not possess the same knowledge. The entire scope of the evidence shows the parties were all acting in contemplation of the probable adoption of a general regrading scheme, the perfection of which would be necessary to a complete performance of the contemplated work of regrading respondent's lots in accordance with his wishes. They all must have known respondent's lots could not be graded to the contemplated depth, if, perchance, that general scheme should be abandoned or fail to materialize. It did so fail, rendering it impossible for the construction company to complete the regrading. Under these circumstances, how should the contract, not clear in its terms but somewhat ambiguous, be construed. Our construction is that respondent contracted, not to settle past claims for dam-

ages which were nominal if they existed at all, but to waive all future damages which might result to his property, especially his buildings, should the grade be fully completed within the stipulated time; but that, if for any reason the grade could not or should not be thus fully completed, he would not waive his claim for damages but would be entitled to prosecute the same. We cannot conclude that the appellant construction company, knowing the uncertainties of the situation, unconditionally agreed to reduce the lots to the stipulated grade within the time named; but do conclude that it did agree that, in the event of its failure to complete the work, respondent should be entitled to prosecute his claim for such damages only as might result to his lots and buildings by reason of any partial regrade that might be made. The appellant construction company could not, and did not, reduce respondent's lots to the desired grade, and his claim for such damages remained unimpaired and available to him.

Appellants, as affecting the measure of damages, offered evidence to show that respondent's lots had been improved by the partial regrading, rather than injured. This evidence was rejected by the trial judge. Appellants' theory was that respondent's injuries, if any, should be measured by the difference in the value of his lots before the construction company commenced work and their value when it suspended, together with damages to his buildings and his loss of rentals. This theory was also rejected by the trial judge. Respondent contended, and the trial court held, that he was entitled to recover for injuries to his buildings, for loss of rentals, and also for the actual cost of completing the grade to the contemplated depth. Applying this rule, the trial court admitted evidence offered by respondent, and found the number of cubic yards of dirt yet to be removed, the cost per yard, and, as this exceeded the total damages demanded by the complaint, awarded judgment for the full amount asked. There is no evidence of the value of respondent's lots before the regrading was commenced, after it was abandoned, or at any

other time.  It might be that their value never equaled the
damages awarded, and that they would not appreciate to that
value if actually regraded as contemplated and desired by
respondent.  For all that appears from the evidence, it is
possible that respondent's judgment for $30,500 may ex-
ceed the value of his lots in their former condition, their
present condition, or the condition in which they would have
been had the regrading been completed to levels correspond-
ing to the established grades of Dearborn street and Tenth
avenue south.  Yet, on an affirmance of the judgment herein,
respondent would not only recover the damages awarded, but
he would at the same time retain his lots, the value of which
might not have been depreciated to any considerable extent
by appellants' alleged breach of contract.  We do not know
that such a condition would result from an enforcement of
the judgment entered, nor do we know the contrary.  The
action should have been, but was not, so tried as to avoid the
possibility of such a result.  Evidence offered by appellants
in support of what they contended to be the proper measure
of damages should have been admitted, and after hearing all
the evidence, the trial judge should have awarded such dam-
ages only as would be necessary to compensate respondent.
He is not entitled to avail himself of appellants' alleged breach
of contract for speculative purposes, and thereby recover
damages largely in excess of any loss he may have actually
sustained.  This he may not have done.  Yet appellants were
deprived of their right to introduce evidence applicable to
their theory of the case.  Punitive damages are not recover-
able in this state.  Compensatory damages only may be
awarded.  In any given case, that measure of damages should
be applied to the facts and circumstances shown which will
result in full compensation to the injured party without pun-
ishing his adversary.

In *Bigham v. Wabash-Pittsburg Terminal R. Co.*, 223 Pa.
106, 72 Atl. 318, the defendant failed to fill plaintiff's lots
to the extent contemplated by the alleged contract.  The

trial court held the measure of damages to be the cost of completing the fill, and directed a verdict accordingly. The defendant contended the proper measure of damages was the difference in the value of the lands with the fill completed and their value at the time of the breach of the contract when they were partially filled. In. reversing the judgment the appellate court said:

"It has been well said that it is difficult to point out in advance what the true measure of damages should be under a given state of facts. If there be different modes of measuring damages, depending on the circumstances, the court should first hear the evidence and instruct the jury afterwards as to the proper measure to be applied. The underlying principle in such cases is that the damages must be such as might naturally be expected to follow a breach of the contract, keeping in mind the benefit which the contracting parties had in contemplation when the agreement was entered into. . . : In this respect what was said in *Seely v. Alden*, 61 Pa. 302, 100 Am. Dec. 642, applies: 'It may turn out that the cost of removing the deposit in a certain case would be less than the difference in the value of the land, and then the cost of removal would be the proper measure of damages; or it may be that the cost of removal would be much greater than the injury by the deposit when the true measure would be the difference in value merely.' The question of the proper measure of damages must always be taken into consideration by the court in the proper disposition of any case wherein damages are claimed. *Wilkinson v. North East Borough*, 215 Pa. 486, 64 Atl. 734."

From the contract itself and the attending circumstances, we cannot conclude the appellant corporation, or the respondent, or either of them, when the work on respondent's lots was commenced, contemplated the actual cost of the completion of any possible unfinished regrade as an element of damages, or as a test to be applied in measuring any damages respondent might sustain and which he only agreed to waive upon condition that the regrade should be completed within the time mentioned and as desired by him. The appellant corporation was entitled to have the damages meas-

ured by that method which would minimize its liability and at the same time secure to respondent a just, fair, and complete compensation. If the extent of such compensation could be ascertained and its reasonable limitations determined from evidence offered by appellant in support of the measure of damages for which it contended, that evidence should have been admitted and a proper measure of damages should have been predicated thereon. Mr. Sutherland, in the third edition of his work on Damages, at § 12, says:

"The principle of just compensation is paramount. By it all rules on the subject of compensatory damages are tested and corrected. They are but aids and means to carry it out; and when in any instance such rules do not contribute to this end, but operate to give less or more than just compensation for actual injury, they are either abandoned as inapplicable or turned aside by an exception."

At § 45 he further says:

"In an action founded upon a contract, only such damages can be recovered as are the natural and proximate consequence of its breach; such as the law supposes the parties to it would have apprehended as following from its violation if at the time they made it they had bestowed proper attention upon the subject, and had full knowledge of all the facts. As otherwise expressed, the damages which are recoverable must be incidental to the contract and be caused by its breach; such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was entered into."

Adopting the principles thus announced, we hold, under the peculiar circumstances of this case, that the appellant corporation was entitled to have that measure of damages applied which would protect it and which at the same time would fully compensate respondent for any actual loss he may have sustained. The evidence offered by appellants was therefore competent. Had it been admitted and had its weight and credibility been sufficiently convincing to show that the decrease in value of respondent's lots, resulting from the partial regrading coupled with damages to his buildings and

his loss of rentals, would have been less than the cost of completing the regrading to the contemplated depth desired by respondent, then the measure of damages for which the appellant corporation contended should have been adopted and applied by the trial court; as it would compensate respondent for all losses by him sustained, and at the same time protect appellant from punitive or speculative damages being imposed upon it for its alleged failure to complete a contract which, without fault on its part, became impossible of full performance, a contingency which it is manifest all the parties contemplated. In admitting evidence of values of the lots prior to and after the partial regrading, any increase or decrease that may have resulted from changes such as a rise or fall in general market values should be eliminated and ignored. In other words, only such changes in values should be considered as were produced by, or directly resulted from the partial performance of the work of regrading.

Although this cause is now before us for trial *de novo*, we cannot enter final judgment, in the absence of competent evidence which was offered by appellants and erroneously excluded by the trial judge. The judgment is therefore reversed, and the cause is remanded with instructions to dismiss as to W. H. Lewis and Clifford Wiley, administrator of the estate of Charles S. Wiley, deceased, and for a new trial between respondent and the Lewis Construction Company.

DUNBAR, C. J., MORRIS, ELLIS, and CHADWICK, JJ., concur.