KNOX v. EASON OIL CO.

No. 29588. May 26, 1942.

*126 P. 2d 247.*

Mitchell & Mitchell, of Enid, for plaintiff in error.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendant in error.

HURST, J. This is an action on an account brought by the plaintiff, Eason Oil Company, against the defendant, Charles E. Knox. The parties waived a jury, and the trial court rendered judgment for plaintiff. Defendant appeals.

The account arose out of the operation by the plaintiff of an oil and gas lease owned by plaintiff and defendant, each having a one-half interest therein. While the account was composed of many items, defendant appeals from the judgment upon two items only, (1) the charge of $281.61 for gas used in the operation of the lease; and (2) the allowance of a credit of $10 for his interest in an air gas lift intermitter.

1. The gas which was used on the lease was furnished by Superior Oil Corporation, and charged to plaintiff under two contracts covering this lease and two others owned by plaintiff, and modifications of said contracts made between said company and plaintiff. The original contracts were dated December 28, 1929. One was an agreement whereby plaintiff sold, and Superior purchased, the casinghead gas produced from the wells on the lease. The other is an agreement whereby Superior agreed to sell to plaintiff gas for use in the operation of the lease, referred to by the parties as to the "gas lift" contract. The gas in controversy here was furnished by Superior as repressure or lifting gas, forced into the well to flow the oil therefrom after natural pressure of gas in the well had become insufficient to do so.

In the casinghead gas contract Superior agreed that it would return to plaintiff, after the extraction of gasoline from the casinghead gas, a portion of the residue gas, but limited the amount to that obtained from the leases of plaintiff after the extraction of gasoline therefrom, less such amount as it was entitled to use in operating its gasoline extraction plant, the provision being expressly subject to the contract for the sale of gas by Superior to plaintiff.

The "gas lift" contract recited that Superior had erected a "gas lift" plant in the vicinity, and agreed to furnish plaintiff high pressure residue gas for lifting purposes. It provided that for such gas as was furnished through its lifting plant, whether it was residue gas due plaintiff under the casinghead gas contract or gas obtained from other sources, plaintiff should pay ten cents per thousand cubic feet. It further provided that should the casinghead gas furnished Superior under contract of December 28, 1928, be of such a quantity that Eason's part thereof would be insufficient to flow the said wells or any of them belonging to Eason, then and in that event Eason reserved the right to purchase gas under pressure from other parties for flowing said wells or any of them. If gas so procured was run through Superior's lifting plant to increase the pressure thereof, plaintiff should pay Superior ten cents per thousand cubic feet therefor. The casinghead gas contract was expressly made a part of the gas lift contract.

By a contract dated November 1, 1930, the casinghead gas contract was modified to provide that the consideration paid by Superior for casinghead gas delivered by plaintiff should be the furnishing by Superior of such residue gas "as may be used in flowing the said wells of Eason Oil Company."

By a contract dated November 1, 1930, the gas lift contract was modified to provide that Superior should make no charge for residue gas furnished by it under the provisions of said contract which should be used in flowing wells as provided therein, and that as consideration for the furnishing of such gas plaintiff should deliver to Superior,

free of cost, all casinghead gas produced from the wells covered by said contract.

The charge made by Superior, of which the item of $281.61 is defendant's share if the charge is proper under the aforesaid contracts, is for gas furnished by it for lifting purposes in excess of the residue from casinghead gas received by it from the lease of plaintiff and defendant. Since under the contracts the only gas Superior was obligated to deliver to plaintiff free of charge was the residue of the casinghead gas received by it from the lease, we think the contention of defendant that the charge was improper is without merit. The evidence at the trial established conclusively that the gas for which the charge was made was procured by Superior from other sources than the lease specified, and under the contracts and the modification agreements Superior was not obligated to furnish such gas free of charge, but the price thereof was expressly fixed at ten cents per thousand cubic feet, which was the price for which it billed plaintiff therefor.

Defendant contends that plaintiff failed to prove that the gas was furnished by Superior in the amount claimed. The itemized account attached to plaintiff's petition, which the witness Hatton testified was taken from plaintiff's books, gave the amount of gas furnished as 11,999 cubic feet at ten cents per cubic foot instead of 11,999 cubic feet at ten cents per thousand. This account was introduced as evidence at the trial without objection on the part of defendant, and no attention was paid to the error. The invoices received by plaintiff from Superior, showing the amount of gas furnished and the charges made therefor, were produced at the trial, and while not offered in evidence, were submitted to counsel for defendant, who used them in the cross-examination of plaintiff's witnesses. Reports from the lease superintendent of plaintiff showing the amount of excess gas furnished were likewise submitted to, and used by,

counsel for defendant. At no time did defendant dispute or question the correctness of the amount and price of the gas so furnished, or that the sum of $281.61 was his proportionate part thereof. His sole contention was that under the contracts and modifying agreements Superior was to furnish the gas free of charge. After the witness Hatton, plaintiff's assistant secretary and treasurer, had testified that $281.61 was the correct amount of such gas bill owing by defendant, and some argument had been made by counsel as to the meaning of the contracts, the following colloquy occurred:

"The Court: You have got the amount of the claim, and don't your contract, wouldn't the construction of your contract determine this whole matter? Mr. Simons: It certainly will. Mr. McKeever: Absolutely. I know that. I am getting to that. I want to show he put the same construction on it that we did and when we do that we will ask the court to construe it the same way and I want to show that they couldn't settle the claim against our will and I will submit that we have it attached to our answer for your consideration later on."

That defendant, having tried the case upon the assumption that the amount of the gas bill charged to him was not in controversy, but that under a proper construction of the contracts any charge for such gas was violative of the terms and conditions thereof, may not upon appeal change his theory and urge that the amount of the bill was not established by the evidence, is well settled. Ross v. Thompson, 174 Okla. 183, 50 P. 2d 385; Ewart v. Boettcher, 174 Okla. 460, 50 P. 2d 676; Black v. Parisho, 152 Okla. 70, 3 P. 2d 673.

Where, in the trial of a cause, evidence of a fact capable of proof is not offered because such fact is tacitly and fully conceded, it is too late to raise such a question for the first time on appeal. Mobley v. Brown, 151 Okla. 167, 2 P. 2d 1034, 83 A. L. R. 1014; Union Petroleum Co. v. Oklahoma, N. M. & P. Ry. Co., 114 Okla. 21, 242 P. 1027; 3 C. J. 735; 2 R. C. L. 77; 3 Am. Jur. 417.

The rules above announced preclude defendant from raising this question on appeal.

2. Defendant owned a one-sixth interest in the air gas lift intermitter, the remaining five-sixths being owned by plaintiff. The appliance had been used for several years, and was in the possession of plaintiff. The evidence as to the value of defendant's interest at the time of trial was conflicting. A witness for plaintiff testified that it was worth $10. A witness for defendant testified that it was worth $207.22 when the value was depreciated in the manner used to ascertain taxable value. The trial court found the value to be that fixed by the witness for plaintiff. There being competent evidence reasonably tending to support the finding of the trial court, it will not be reversed. Mattes v. Baird, 176 Okla. 282, 55 P. 2d 48; Anderson v. Christburgh, 176 Okla. 300, 55 P. 2d 65. In such case it stands on the same footing as a verdict of the jury. Mulkey v. Anglin, 166 Okla. 8, 25 P. 2d 778, 89 A. L. R. 980.

Affirmed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, and DAVISON, JJ., concur. WELCH, C. J., and ARNOLD, J., absent.