Fred A. **SCHNEBERGER** and Zola Schneberger, Plaintiffs,

v.

**APACHE CORPORATION,** Defendant.

No. 79826.

Supreme Court of Oklahoma.

Oct. 25, 1994.

Rehearing Denied Jan. 18, 1995.

Allan DeVore, Bill Tharp, The DeVore Law Firm, Douglas E. Burns, Oklahoma City, for plaintiffs.

Lance Stockwell, Frank Spiegelberg, Boesche, McDermott & Eskridge, Tulsa, for defendant.

LAVENDER, Vice Chief Justice.

The United States District Court For the Western District of Oklahoma certified the following questions pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 & Supp.1992 §§ 1601 et seq.:

(1) what is the measure of damages under Oklahoma law for breach of a settlement agreement to reduce water pollutants, which water was polluted by oil and gas drilling operations of the defendant;

(2) if the measure of damages is plaintiffs' cost of remediation, may the jury consider a remediation plan different from that approved by the Oklahoma Corporation Commission, which agency has exercised its jurisdiction over defendant's clean-up operations, and which agency the parties agreed in the settlement agreement could modify the remediation plan specified in the agreement?

We affirm in accordance with settled principles of Oklahoma law that: (a) diminution in value is the maximum measure of damages for breach of a settlement agreement to reduce water pollutants; and (b) this court will not address whether a jury may consider a remediation plan different from that approved by the Corporation Commission in that this court holds that cost of remediation is not the proper measure of damages.

### FACTS

Plaintiffs, Fred and Zola Schneberger are the owners of a 154.95–acre tract located in the Northwest Quarter of Section 17, Township 10 North, Range 18 West, Washita County, Oklahoma (the Schneberger property). On June 29, 1982, the defendant, Apache Corporation (Apache), commenced drilling an oil and gas well on the Schneberger property, which well is known as the "Schneberger 1–17."

On March 23, 1984, plaintiffs filed a Complaint in the United States District Court for the Western District of Oklahoma, Case No. CIV–84–772–T (the 1984 action), alleging that Apache had polluted the Schneberger property with various harmful and deleterious substances in its drilling and operation of the Schneberger 1–17 well, causing numerous property and personal damages. The 1984 Complaint also alleged that Apache had polluted the Schneberger property in Apache's drilling and operation of a well known as the "Rogers 1–18" located on prop-

erty upstream from the Schneberger property.

By agreement dated March 4, 1986, plaintiffs and Apache settled the 1984 action, and the parties filed their Stipulation of Dismissal with prejudice to refiling the action. The agreement settled a number of other proceedings that were pending between plaintiffs and Apache in connection with the 1984 action, the Rogers 1–18 well and property, and the Schneberger property and its underlying groundwater.

Pursuant to the agreement, Apache paid to plaintiffs a total of $80,000 for damages and expenses related to the 1984 action. The damages included but were not limited to "loss of cattle, crop damages, land damages, water use, location damages and any other claims which Schneberger may have or had against Apache arising out of or related to any of the actions described in the recitals to [the] Agreement." Pursuant to court order, Apache additionally paid attorneys fees to plaintiffs of approximately $179,000.00.

It was further agreed that Apache would request the Oklahoma Corporation Commission (Commission) to stay further proceedings regarding a Commission mandated cleanup. However, the Commission exercised its exclusive jurisdiction on pollution matters and ordered a cleanup. Pursuant to the agreement, if the Commission action was not stayed, the parties agreed to be subject to its regulatory requirements. The action was not stayed. The Commission has maintained jurisdiction and monitored Apache's progress. Apache continues to be subject to the cleanup plan approved by the Commission. Apache has spent significant sums implementing the cleanup plan ordered by the Commission.

On October 25, 1989, plaintiffs filed their Complaint in this action alleging *inter alia* breach of the settlement agreement in that Apache has failed to achieve the reduced level of water contaminants for which plaintiffs contracted. Plaintiffs contend that the proper measure of damages is cost of remediation; and further, plaintiffs seek to introduce evidence at trial of remediation methods not contemplated in the Commission orders. Apache contends that the proper measure of damages is diminution in value of the property.

**I.**

For a breach of an obligation arising from a contract, the general measure of damages is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." 23 O.S.1991, § 21. Plaintiffs are arguing that Apache has abandoned the cleanup as required by the settlement agreement, and plaintiffs are therefore entitled to recover remediation costs to clean up the property contaminated by defendant's drilling operations to the standard (primary goal) required by the settlement agreement.

The measure of damages to real property has generally been determined according to whether the injury is abatable (temporary) or permanent. In *A.B.C. Const. Co. of Oklahoma v. Thomas,* 347 P.2d 649, 651 (Okla. 1959), this court held that:

> We are committed to the rule that where damages are of a permanent nature, the measure of damage is the difference between the actual value immediately before and immediately after the damage is sustained. *Mid–Continent Petroleum Corporation v. Fisher,* 183 Okla. 638, 84 P.2d 22 [1938]; *City of Stillwater v. Cundiff,* 184 Okla. 375, 87 P.2d 947 [1939]; *Oden v. Russell,* 207 Okla. 570, 251 P.2d 184 [1952]. Where property can be repaired and substantially restored to its former condition, the measure of damage is the reasonable cost of repairing the damage and restoring it to its former condition. *Ellison v. Walker,* 281 P.2d 931 [Okla.1955].

Under these general rules, plaintiffs would be entitled to recover the reasonable costs of repairing the damage to their property as specified in the settlement agreement. However, Oklahoma case law has limited recovery of repair and restoration costs so that recovery cannot exceed the depreciated value of the land itself. *Peevyhouse v. Garland Coal & Mining Co.,* 382 P.2d 109, 114 (Okla.1962) *cert. denied,* 375 U.S. 906, 84 S.Ct. 196, 11

L.Ed.2d 145 (1963). In *Peevyhouse*, this court stated:

> We therefore hold that where, in a coal mining lease, lessee agrees to perform certain remedial work on the premises concerned at the end of the lease period, and thereafter the contract is fully performed by both parties except that the remedial work is not done, the measure of damages in an action by lessor against lessee for damages for breach of contract is ordinarily the reasonable cost of performance of the work; however, where the contract provision breached was merely incidental to the main purpose in view, and where the economic benefit which would result to lessor by full performance of the work is grossly disproportionate to the cost of performance, the damages which lessor may recover are limited to the diminution in value resulting to the premises because of the non-performance.

This court concluded that diminution in value was the proper measure of damages based on Oklahoma statutes which limit the recovery of damages to an amount that an aggrieved party would gain by full performance, 23 O.S.1961, § 96, and require that "[d]amages, in all cases, be reasonable," 23 O.S.1961, § 97.[1]

Apache relies on *Peevyhouse* for the proposition that the correct measure of damages for breach of the settlement agreement is the loss in value of the plaintiff's property. Plaintiffs estimate that it will cost approximately $1.3 million to complete remediation to the standards set forth in the agreement, while Apache estimates that the loss in market value of the property to be $5,175.00. Therefore, Apache contends that under the rule established in *Peevyhouse*, plaintiffs' recovery should be limited to the diminution in value since remediation costs are grossly disproportionate to the loss in value of the land.

Contrarily, plaintiffs argue that recent statutory enactments and federal case law reflect a change in Oklahoma policy regard-ing protecting the environment from pollution caused by oil and gas drilling operations. Plaintiffs cite the enactment of statutes designed to protect the environment from pollution including:

> 52 O.S.1965, §§ 309–320, providing for the use of the state police power to regulate and remediate oil and gas wells which are causing pollution of waters or land;

> 82 O.S.1972, § 1020.15 (Oklahoma Groundwater Law), prohibiting pollution of fresh groundwater;

> 82 O.S.1968, §§ 931 et seq. (Oklahoma Pollution Control Coordinating Act), creating the Department of Pollution Control and delegating the power to prevent and abate pollution;

> 52 O.S.1982, §§ 318.2–318.9 (Surface Damage Act), providing that a mineral owner or lessee negotiate with the surface owner for the payment of damages which may be caused by oil and gas drilling operations.

Plaintiffs urge that the policy change reflected in these statutes clearly indicates that the diminution in value rule established in *Peevyhouse* is outdated and contend that the cost of remediation is the proper measure of damages for pollution caused by oil and gas drilling operations. Plaintiffs cite to two federal decisions interpreting Oklahoma law regarding the proper measure of damages wherein the federal courts determined Oklahoma would no longer follow *Peevyhouse*.[2]

In *Rock Island Improvement Company v. Helmerich & Payne, Inc.*, 698 F.2d 1075 (10th Cir.1983) *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1302 (1983), the circuit court held that cost of performance is the proper measure of damages for a lessee's breach of a reclamation clause requiring, after completion of mining operations, that the land be restored as nearly as possible to its former condition. The court concluded that Oklahoma would no longer follow the rule established in *Peevyhouse* because of a change in public policy, as expressed in stat-

---

1. *Peevyhouse,* 382 P.2d at 113.

2. Neither of these cases were certified to this court.

utes, regarding the reclamation and conservation of land subjected to mining operations.[3] The court went through a calculated analysis of statutory enactments and public policy to reach its decision. Additionally, the court underscored the fact that *Peevyhouse* was "a 5–4 decision with a strong dissent" and that the case had been cited only twice subsequently and in neither instance for the case's fundamental holding.[4]

In yet a later decision, *Davis v. Shell Oil Co.*, 795 F.Supp. 381 (W.D.Okla.1992), the district court relying on *Rock Island*, rejected defendant's claim that the measure of damages for oil pollution where the cost of cleanup is disproportionate to the end to be attained is the land's diminution in value, not the cost of the cleanup. The court, citing *Rock Island*, noted that Oklahoma courts no longer follow the rule established in *Peevyhouse* due to changes in public policy.[5] While the district court in *Davis* acknowledged there were cases subsequent to *Peevyhouse* holding that diminution in value is the proper measure of damages,[6] the court appeared to accept plaintiffs' argument that the cases were inapplicable and outdated. Additionally, the court noted that these cases dealt with only permanent damages and citing to a tenth circuit case, *Miller v. Cudahy*, 858 F.2d 1449, 1456–57 (10th Cir.1988), maintained that there was no limitation for temporary damages.[7]

**3.** *Rock Island*, 698 F.2d at 1078. The court cited the enactment, after the *Peevyhouse* decision, of the Mining Lands Reclamation Act, 45 O.S.1967 § 722. The Act provided in part:

"It is hereby declared to be the policy of this State to provide, after mining operations, for the reclamation and conservation of land subjected to surface disturbance by open cut mining and thereby to preserve natural resources, to aid in the protection of wildlife and aquatic resources, to establish recreational, home and industrial sites, to protect and perpetuate the taxable value of property, and to protect and promote the health, safety and general welfare of the people of this State."

**4.** In *Western Natural Gas Co., v. Cities Service Gas Co.*, 507 P.2d 1236 (Okla.1972) *cert. denied*, 409 U.S. 1052, 93 S.Ct. 559, 34 L.Ed.2d 506 (1972), a dispute wherein the seller claimed that the buyer had breached implied obligations in a contract covering the sale of natural gas, this court distinguished the holding of *Peevyhouse* finding that the main purpose of the contract was more than incidental *and* the cost was not disproportionate to the benefit that would accrue, i.e., the measure of damages being applied was the same used in *Peevyhouse*.

**5.** *Davis*, 795 F.Supp. at 385.

**6.** *Allied Hotels v. Barden*, 389 P.2d 968 (Okla. 1964); *City of Ardmore v. Orr*, 35 Okla. 305, 129 P. 867 (1913); *Ellison v. Walker*, 281 P.2d 931 (Okla.1955).

**7.** This decision by the tenth circuit court in *Miller* is worth a brief discussion. In *Miller*, the tenth circuit apparently misinterpreted Kansas law regarding the measure of damages as it did in *Rock Island* with Oklahoma law. In a later case, *Maxedon, et al. v. Texaco Producing, Inc.*, 710 F.Supp. 1306 (D.Kan.1989) the district court

had these comments to make concerning the *Miller* decision:

In its previous order of March 31, 1989, the court noted that the measure of damages for temporary injury to land is 'the reasonable cost of repairing the property, with interest, which may include the value of the use thereof during the period covered by the suit, or it may be the diminution in the rental value of the property, together with such special damages to crops, improvements, etc. ...' The court also noted that temporary damages could not exceed the fair market value of the land before injury however, citing Anderson v. Rexroad, 180 Kan. 505, 513, 306 P.2d 137 (1957). The court ruled that it would not allow plaintiffs' claim for damages in excess of the fair market value before injury. *The court still believes its position to be correct;* however, in *Miller v. Cudahy Co.*, 858 F.2d 1449 (10th Cir.1988), the Tenth Circuit affirmed the district court's award of temporary damages which exceeded the potential recovery for permanent damages, which is the difference in the fair market value of the land before and after the injury. The district court calculated temporary damages as the loss of value in the use of the property. The Circuit Court noted in *Miller* that "[a]ppellants' assertion that temporary damages may not exceed the value of the property injured, or essentially that there must be a 'cap' on an award of temporary damages, is unsupported by pertinent Kansas authority." *Unfortunately, the Circuit Court does not cite any authority to support its statement, and makes no reference to the Alexander [sic] decision this court relied on in its previous ruling.* The court believes that the Circuit is wrong on this point, but, for obvious reasons, is compelled to follow the holding in that case. (emphasis added) (citations omitted).

*Anderson* supports the district court's conclusion that Kansas law would not allow damages in excess of the value of the property.

## II.

■ Likewise, Oklahoma case law from statehood to the present, including cases resolved under the Act as of 1986, have interpreted the proper measure of damages to be diminution in value.[8] And although, *Peevyhouse* interpreted the application of the diminution in value rule to where the lease provision breached was *incidental* to the main purpose of the contract, certainly, later cases make no such distinction. Whatever the rationale, the essence of the *Peevyhouse* holding—to award diminution in value rather, than cost of performance, has been consistently adhered to in cases giving rise to temporary and permanent injuries to property. This approach attempts to resolve in as fair a manner as possible the inequities inherent in a situation regarding two competing interests *and* it still represents the majority view.

In *H.P. Droher and Sons v. Toushin.*, 250 Minn. 490, 499, 85 N.W.2d 273, 280 (1957) the court, in a contract dispute concerning the construction of a house, determined that:

> It would seem that the better rule *and the one followed by a majority of the courts* is that, where there is a substantial good-faith effort to perform the contract but there are defects of such a nature that the contract has not been performed according to its terms, which defects can be remedied without the destruction of a substantial part of the building, the owner is entitled to recover the cost of making the work conform to the contract but, where it appears that the cost of remedying the defects is grossly disproportionate to the benefits to be derived therefrom, the owner is entitled to recover the difference between the value of the property as it would have been if the contract had been performed according to its terms and the

value in its condition as constructed. (Citations omitted).[9]

A federal case citing to the holding in *Peevyhouse, Missouri Baptist Hosp. v. United States,* 555 F.2d 290, 295 (Ct.Cl.1977), held that "[i]n an action for breach of contract, as opposed to a suit sounding in specific performance, the lessor is entitled only to the damages that were caused to the property by the failure to restore. Where the expense of restoration exceeds the diminution in the market value of the property caused by the lessee's nonperformance, the diminution in fair market value is the proper measure of damages."

While understandably, plaintiffs want to be compensated for the injury to the property,

> under the 'cost of performance' rule, plaintiffs might recover an amount about nine times the total value of their farm. Such would seem to be 'unconscionable and grossly oppressive damages, contrary to substantial justice' within the meaning of the statute. Also, it can hardly be denied that if plaintiffs here are permitted to recover under the 'cost of performance' rule, they will receive a greater benefit from the breach than could be gained from full performance.... *Peevyhouse,* 382 P.2d at 113.

In other words, "plaintiff is not to be put in a better position than it would have been if the defendant had performed the terms of the lease." *Missouri Baptist Hospital,* 555 F.2d at 295.

## III.

■ We next address plaintiffs' argument that a change in Oklahoma policy concerning environmental protection requires this court to adopt cost of remediation as the correct measure of damages in a breach of contract

---

**8.** *Enid & A. Ry. Co. v. Wiley,* 14 Okla. 310, 78 P. 96, 99 (1904); *Ellison v. Walker,* 281 P.2d 931, 933 (Okla.1955); *Peevyhouse v. Garland Coal & Mining Co.,* 382 P.2d 109, 114 (Okla.1962); *Allied Hotels, Ltd. v. Barden,* 389 P.2d 968, 972–73 (Okla.1964); *Kerr–McGee Corp. v. Petchinsky,* 438 P.2d 475, 476–77 (Okla.1968); *Briscoe v. Harper Oil Co.,* 702 P.2d 33, 37 (Okla.1985); *Davis Oil Co. v. Cloud,* 766 P.2d 1347 (Okla.1986); *Andress v. Bowlby,* 773 P.2d 1265, 1267 (Okla.1989); *Dyco Petroleum Corp. v. Smith,* 771 P.2d 1006,

1008 (Okla.1989); *Houck v. Hold Oil Corp.,* 867 P.2d 451, 461–62 (Okla.1993).

**9.** While there are numerous law review articles criticizing *Peevyhouse,* it would appear that the courts have followed it. *See, e.g., Bowes v. Saks & Co.,* 397 F.2d 113, 117 (7th Cir.(Ill.) 1968); *P.G. Lake, Inc. v. Sheffield,* 438 S.W.2d 952, 955 (Tex.Civ.App.1969).

action involving pollution to land. We begin by stating the obvious; the state of Oklahoma is committed to protecting the environment and preserving the state's natural resources. This is all the more evident given the passage of the Surface Damage Act, 52 O.S.Supp.1982, § 318.2 et seq., which states Oklahoma's policy regarding damage to land caused by oil and gas drilling operations. However, the intent of the Act was never to tip the scale in favor of one interest over the other, but rather, provide a balance between these two competing interests.

It cannot be said that the surface of the land constitutes a less vital resource to the State of Oklahoma than does the mineral wealth which underlies it. The surface supports development for business, industrial and residential purposes. It also supports our vital agricultural industry. The passage of the surface damages act guarantees that the development of one industry is not undertaken at the expense of another when the vitality of both is of great consequence to the well-being of our economy. In times when both the agricultural and oil and gas segments of our economy are suffering it is especially important that such legislation is enforced. *Davis Oil Co.*, 766 P.2d 1347, 1351 (Okla. 1986).

Prior to the Surface Damage Act, the holder of an oil and gas lease had almost an unrestricted right to go on the leased land and prospect for oil. The only basis for recovery of damages was proof of wanton or negligent destruction of the land or use of lands not reasonably necessary for oil and gas exploration. *Wilcox Oil Co. v. Lawson*, 341 P.2d 591, 594 (Okla.1959). The measure of damages for negligent destruction of land or crops was the difference between the value of such land before the injury and the value after the injury. *Id.* at 595.

The Surface Damage Act changed the standard of liability for damages to the surface estate, requiring the holder of an oil and gas lease to negotiate with the surface owner, prior to beginning operations, for the payment of damages which may be caused by the drilling. 52 O.S.1991, § 318.5. As noted above, this change in liability reflected a legislative effort to balance the interests of the two resource owners and expressed a change in policy toward promoting environmental conservation. *Davis Oil Co.*, 766 P.2d at 1351.

However, even under the Surface Damage Act, we have determined that the measure of damage to the surface estate to be the diminution in the value of the land caused by the drilling operations. In *Davis Oil Co.*, this court identified the following eight factors which may be submitted to a jury to determine diminution in value:

1. The location or site of the drilling operations.

2. The quality and value of the land used or disturbed by said drilling operations.

3. Incidental features resulting from said drilling operations which may affect convenient use and further enjoyment.

4. Inconvenience suffered in actual use of the land by operator.

5. Whether the damages, if any, are temporary or permanent in nature.

6. Changes in physical condition of the tract.

7. Irregularity of shape and reduction, or denial of access.

8. The destruction, if any, of native grasses, and/or growing crops, if any, caused by drilling operations.[10]

We recognized in *Davis Oil Co.*, that these factors were not to be considered individual items of damage, but were to be considered in determining any loss in value of the land caused by the drilling operations. *Id.* at 1352. These same factors were cited with approval in *Houck v. Hold Oil Corporation*, 867 P.2d 451 (Okla.1993). In *Houck*, this court also recognized that, under the Surface Damage Act, the measure of damages for temporary injuries to land would be the cost to restore the land to its former condition, only if this cost was less than the diminution in fair market value of the land. *Houck*, 867 P.2d at 460.

The Surface Damage Act accurately reflects Oklahoma policy concerning conserva-

---

10. *Davis Oil Co.*, 766 P.2d at 1352.

tion of the state's natural resources and balancing the interests of oil and gas operators with those of surface estate owners. Under this Act, we have consistently determined that diminution in value is the proper measure for permanent damages. Furthermore, as noted above in *Houck,* this court continues to hold that where oil and gas drilling results in temporary damage to land and the cost to restore the land exceeds the loss in value, then the diminution in value is the correct measure of damages.

## IV.

■ Our earlier decisions were grounded on a statutory basis for holding to diminution in value as a proper measure of damage as well. The current statute, 23 Okla.Stat.1991, § 97 (titled "Damages must be reasonable") provides as follows:

Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered.

In *Peevyhouse,* for example, this court noted that the above statute was most often cited in tort cases, but recognized that the statute, by its own terms, was applicable in breach of contract actions.[11] The statutory language closely resembles the reasoning this court has employed in adhering to the diminution in value rule in breach of contract actions.

In the present action, plaintiffs argue that Apache's attempt to abate the pollution on plaintiffs' property and its subsequent inability to reach the standards required by the agreement constitute defective or unfinished performance. Plaintiffs' estimated costs of remediation are $1.3 million dollars. The estimated diminution in value of plaintiffs' land is estimated at $5,175.00. Certainly, in a breach of contract action, the "cost to complete" must be given consideration as a measure of damages. However, where the

cost is grossly disproportionate to the cost of reclamation as in *Peevyhouse,* a review of recent case law suggests that courts are adhering to the diminution in value award. The primary reason expressed by the courts for doing so is to avoid "economic waste." In *County of Maricopa v. Walsh and Oberg Architects, Inc.,* 16 Ariz.App. 439, 494 P.2d 44 (1972), the court, quoting comment (b) of the Restatement (First) of Contracts § 346(1) (1932) states:

The purpose of money damages is to put the injured party in as good a condition as that in which full performance would have put him; *but this does not mean that he is to be put in the same specific physical position....* There are numerous cases ... in which the value of the finished product is much less than the cost of producing it after the breach has occurred. Sometimes defects in a complete structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable. *The law does not require damages to be measured by a method requiring such economic waste.* (Emphasis added).[12]

## V.

Finally, we must assume that the parties to this contract were aware of what the law in Oklahoma was concerning the measure of damages for a contractual breach—regardless of the two federal decisions holding otherwise discussed earlier in this opinion. The parties to this contract were free to specify in the contract what the measure of damages would be in the event of a breach. However, the contract does not include such a provision and it is left to this court to determine the remedy under the law. Given the facts of this case and the reasoning considered herein, we find no reason, under either the Surface Damage Act or prior case law to depart

11. *Peevyhouse,* 382 P.2d at 113.

12. For an instructive discussion on the differences between the Restatement (First) of Contracts and the Restatement (Second) of Contracts as to the measures of damages recommended in such cases *see* Carol Chomsky, *Of Spoil Pits and*

*Swimming Pools: Reconsidering the measure of damages for Construction Contracts,* 75 Minn. L.Rev. 1445 (1991). As the article notes, however, a review of recent case law suggests that courts are still adhering to the reasoning of the Restatement (First) of Contracts.

from our adherence to the diminution in value rule.

## CONCLUSION

By holding that diminution in value is the proper outer limit of damages recoverable we do not mean to suggest that this court is any less than totally committed to the principles of conservation and reclamation. Our decision herein does not affect the authority of the Corporation Commission to regulate and administer the antipollution laws and policies of this state. However, we recognize that nothing in a private injury award requires a plaintiff to apply the award to reclaiming the land.[13] As this court noted in *Peevyhouse*, "[i]t is highly unlikely that the ordinary property owner would agree to pay $29,000 (or its equivalent) for the construction of "improvements" upon his property that would increase its value only about ($300) three hundred dollars." In the case presented, plaintiffs seek to recover personally, damages from water pollution caused by Apache's operation. This is a private right dispute resulting from the liability of one individual to another under state law, *Tenneco Oil Co. v. El Paso Natural Gas Co.*, 687 P.2d 1049, 1054 (Okla.1984) and we will adhere to the established principles of law determinative of such a dispute.

In that Oklahoma law requires damages to be reasonable in all cases, and consistent with the application of diminution in value rule to breach of contract actions for defective or unfinished performance employed in past cases, this court affirms that the diminution in value is the correct measure of damages in the present action. There is no justification for addressing the second question presented for our deliberation in that we have determined diminution in value is the correct measure of damages under the facts presented.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, SIMMS and WATT, JJ., concur.

ALMA WILSON, KAUGER and SUMMERS, JJ., concur in part; dissent in part.

OPALA, J., dissent.

---

13. An interesting postscript to the *Rock Island* case would be to know how much of the $375,-000.00 verdict went towards reclaiming property whose value was decreased by only $7,000.00.