2006 OK CIV APP 35

Don MEINDERS, Plaintiff/Appellee,

v.

Tim JOHNSON, Margie Walters, Arnold Johnson and Wynema Johnson, E.J. Tucker and Betty Jean Tucker, William Hodges and Geraldine Hodges, Defendants/Appellants,

Jackson Ranches, Inc., Defendant.

No. 99,981.

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 2, 2005.

Certiorari Denied April 3, 2006.

Frank D. Spiegelberg, John L. Randolph, Jr., Pray, Walker, Jackman, Williamson & Marlar, Tulsa, OK, for Appellants.

Allan DeVore, The DeVore Law Firm, P.C., Oklahoma City, OK, and Douglas E. Burns, Terry L. Stowers, Daniel W. Peyton, Burns & Stowers, P.C., Norman, OK, for Appellee.

Opinion by LARRY JOPLIN, Presiding Judge.

¶1 Defendants/Appellants Tim Johnson, Margie Walters, Arnold Johnson and Wynema Johnson, E.J. Tucker and Betty Jean Tucker, William Hodges and Geraldine Hodges (Defendants) seek review of the trial court's order granting a mandatory injunction, thereby directing Defendants to remedy surface and subsurface pollution from mineral exploration and production on property owned by Plaintiff/Appellee Don Meinders. In this proceeding, Defendants complain the trial court erred as a matter of both law and fact in granting injunctive relief, particularly invading the exclusive jurisdiction of the Oklahoma Corporation Commission to regulate, control and oversee remediation of sites polluted as a result of mineral exploration.

## I. STATEMENT OF FACTS

¶2 In 1972, Plaintiff acquired the surface and fractional mineral interests of property located in Garvin County, Oklahoma. Defendants were and are the working interest owners and/or operators of mineral leases covering Plaintiff's property as heirs of Frank Walters and successors in interest to the owners of the mineral leases covering Plaintiff's property.

¶3 At the time of Plaintiff's acquisition, the property—a part of the Robberson Field—had been subject to substantial mineral exploration under leases generally dating from the 1920s. As a result of the years of mineral exploration and production (some by Defendants' immediate predecessor in interest, Frank Walters), the property became dotted with wells, some producing, but also many abandoned, unplugged non-producing well bores, as well as pieces of abandoned equipment. The property also showed obvious signs of surface pollution from salt brine and mineral spills, as well as severe erosion.

## II. THE INSTANT SUIT AND TRIAL

¶4 In 1995, Plaintiff commenced the instant action against Defendants and others, as the owners of the working interests in the minerals underlying his surface estate, seeking damages for the surface and subsurface pollution of his property. Plaintiff also sought injunctive relief to compel the cleanup and remediation of the surface/subsurface pollution attributable to mineral operations.

¶5 Plaintiff settled with some of the defendants, received over four million dollars in settlement proceeds, and dismissed his claims against the defendants with whom he

settled. Shortly before trial in October 2002, Plaintiff dismissed his damages' claims against the remaining Defendants, and the parties proceeded to trial on the claim for injunctive relief only.

¶ 6 At trial, Defendants stipulated to their ownership of the working interest in leases and wells on Plaintiff's property. For over six days, the parties presented expert and other testimony and evidence concerning the cause and extent of the pollution of the surface estate and the subsurface aquifers.

¶ 7 Plaintiff testified concerning the physical condition of the surface estate, and particularly establishing the presence of open, unplugged well bores, abandoned oil field equipment, and evidence of erosion-causing surface spills of salt brine and mineral products. Plaintiff testified that Walters had been observed pumping salt brine into one or more open well bores without a valid permit from the Corporation Commission, and Plaintiff attributed much of the damage to his surface estate and subsurface aquifers directly to pollution from mineral operations by Frank Walters, Defendants' immediate predecessor in interest.

¶ 8 Plaintiff offered the opinions of two experts. One of Plaintiff's experts opined that, based on his observations and testing, Walters' mineral operations caused and contributed to the surface and subsurface pollution of Plaintiff's property, and particularly, the salt water pollution of fresh and treatable underground aquifers due to the absence of adequate surface casing in producing and injection wells operated by Walters. A second expert attributed the salt water contamination of the groundwater to mineral operations, particularly surface spills and subsurface leaking well bores, not naturally occurring geological conditions as asserted by Defendants.

¶ 9 Defendants attributed most of the pollution and erosion of Plaintiff's property to the acts or omissions of prior owners and operators of the mineral leases covering Plaintiff's property. Defendants offered the records of the Soil Conservation Service from the mid–1960s (prior to Plaintiff's acquisition of the property), reflecting areas of severe surface pollution of Plaintiff's property from mineral operations, and ad valorem tax records reflecting assessment of areas of Plaintiff's property as "oil wasteland," taxed at a substantially lower rate than surrounding unaffected acreage.

¶ 10 Defendants also presented the testimony of three experts. One of Defendants' experts asserted the soils of Plaintiff's property did not have sufficient permeability to permit the migration of brine from surface spills to the subsurface aquifers. Based on their observations and testing, the Defendants' other experts attributed the salt water contamination of the groundwater to naturally occurring geologic processes.

¶ 11 Defendants called two Corporation Commission employees to testify. One attributed much of the surface erosion to the after-effects of salt water pits associated with older mineral exploration; testified that, while current Corporation Commission regulation required cemented surface casing below the base of treatable water, the regulations did not require older wells to be so cemented; and, that any request for further casing of old wells would presumably be preceded by a hearing before a Corporation Commission administrative hearing officer. The other testified that, from his review of the records, it appeared that the salt-water pollution of the subsurface aquifers was attributable to natural geologic processes, not oil and gas exploration.

¶ 12 The trial court also conducted a personal inspection of the property. By order filed October 1, 2003, the trial court held for Plaintiff on a determination that Defendants "created and/or maintained a continuing public nuisance on the subsisting oil and gas leases on Plaintiff's property."[1] The trial

1. The trial court's order provides in pertinent part:

> 2. This is a matter of equitable cognizance, and the Court shall exercise its equitable powers to require restoration of the surface of the Plaintiff's property and the groundwater of the State of Oklahoma in and under Plaintiff's property so far as practicable, and in light of the risks attendant to an ongoing pollution, and/or migration thereof.
> 3. While this Court shall exercise its equitable jurisdiction herein, nothing in this order shall

court consequently directed Defendants to undertake "cleanup activities" on Plaintiff's property in phases.[2] For future determination, the trial court reserved ruling on the questions of whether and/or to what extent "Defendants are entitled to a credit for settlement proceeds paid by the prior defendants in this litigation to Plaintiff and/or whether Plaintiff may be equitably required to pay for a portion of the cleanup activities at any time ordered by this Court." Defendants appeal.

## III. PROPOSITIONS OF ERROR

¶ 13 In their first proposition, Defendants complain that Plaintiff did not meet his burden of proof to demonstrate, by clear and convincing evidence free of serious doubt, their creation and/or maintenance of any actionable public nuisance. Defendants here

argue that, in granting injunctive relief, the trial court ignored the uncontroverted evidence and testimony of their experts to the effect that the sources of the "oil and saltwater contamination on [Plaintiff's] lands was occurring naturally, and had existed for many years prior to the first oil exploration in the area."

¶ 14 In their second, third and fourth propositions, Defendants assert Plaintiff did not demonstrate a basis for issuance of a mandatory injunction against them. In these propositions, Defendants argue the evidence and testimony demonstrated no basis for injunctive relief against them because the evidence showed: (1) Plaintiff had accepted a settlement for damages due to one minimal spill at a well operated by them; (2) all wells operated by them met the surface casing requirements at the time of completion in accord with Corporation Commission rule, O.A.C.

preclude any party from pursuing a pollution abatement action before the Oklahoma Corporation Commission; . . . .

4. The . . . Defendants in this case have created and/or maintained a continuing public nuisance on the subsisting oil and gas leases on Plaintiff's property, and, therefore, diminution in value of Plaintiff's property does not serve as an outer limit on monetary expenditures that the Court can require.

5. The Court finds and orders that cleanup of Plaintiff's property shall go forward in phases until the Court is satisfied that the laws, policies, rules and regulations of the State of Oklahoma and the Oklahoma Corporation Commission have been complied with so far as this Court deems practicable. Moreover, the Court reserves the right, at any time, to require the parties to conduct a risk based assessment of the contamination, and the threat posed by it, in accordance with applicable Oklahoma Corporation Commission rules and regulations.

6. The Court shall retain continuing jurisdiction to supervise cleanup activities as hereinafter ordered.

7. The cleanup shall be conducted in phases, and the Court shall determine what additional cleanup should be ordered, if any, upon completion of each phase, and/or during such phase, and after hearing.

. . . .

9. This Court, in the exercise of its equitable power, shall hereafter make determination of whether Defendants are entitled to a credit for settlement proceeds paid by prior Defendants in this litigation to Plaintiff and/or whether Plaintiff may be equitably required to pay for a portion of the cleanup activities at any time ordered by this Court. In that regard, Plaintiff

is hereby ordered to make available to Defendants, and to this Court, all prior agreements of settlement, and any related documents, by and between Plaintiff and any prior Defendant. . . . Any determination of credit, and/or Plaintiff's liability for cleanup, shall be determined upon hearing to be set herein.

10. All parties shall be required to make monthly reports due on the 1st day of such month, to the Court of the progress of the Phase I abatement ordered hereby. Defendants shall implement Phase I hereof in such a manner as to comply therewith within 18 months of the date hereof.

2. The first phase of cleanup required Defendants to: properly plug all abandoned wells on their leases within 180 days; immediately cease production from any wells on their leases which do not contain cemented surface casing extending from the surface to at least 50 feet below the base of treatable water; immediately plug and abandon any producing well in which Defendants chose not to install cemented surface casing as ordered within six months; cease saltwater injection operations on their leases until they obtain a valid Oklahoma Corporation Commission disposal permit and all the wells on the lease had been properly plugged or surface casing installed; "restore the surface of the polluted areas to a condition free of erosion with soil quality and chemical composition that will maintain a healthy, mature stand of native grasses"; "remove and properly dispose of abandoned pipelines, equipment, tanks, power stations, foundations and debris"; and "conduct and achieve such remediation in a fashion that will prevent further erosion."

165:10-3-4(c) [3]; (3) the physical impossibility of contamination of the subsurface aquifers by salt water migrating *up* any well bore due to insufficient hydrologic pressure; (4) no injection of salt water into a well bore by anyone other than Walters, and certainly not by any of the Defendants; and, (5) Plaintiff's unreasonable delay in seeking relief after his acquisition of the property, resulting in the inequitable imposition on them of liability for the acts and omissions of both their immediate and remote predecessors in interest.

¶ 15 In their fifth proposition, Defendants assert the trial court invaded the exclusive jurisdiction of the Oklahoma Corporation Commission to regulate, control and oversee remediation of sites polluted as a result of mineral exploration. See, 17 O.S. § 52(A)(1), (2) [4]; 27A O.S. § 1-3-101(E) [5]; 52 O.S. § 139.[6] Here, Defendants argue that the general provisions of 50 O.S. §§ 1, et seq., defining "public nuisance" and authorizing nuisance remedies, cannot be read to "trump" the exclusive jurisdiction provisions 17 O.S. § 52(A), 27A O.S. § 1-3-101 and 52 O.S. § 139. In their sixth and final proposi-tion, Defendants complain the trial court erred in refusing to require Plaintiff to contribute his settlement monies toward the remediation of his surface estate.

¶ 16 To these propositions, Plaintiff responds, first arguing that the pollution of "any air, land or waters of this state" is statutorily defined as a public nuisance. 27A O.S. §§ 2-6-102, 2-6-105. Secondly, Plaintiff argues that "[e]very successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by a former owner, is liable therefor in the same manner as the one who first created it," and "[n]o lapse of time can legalize a public nuisance amounting to an actual obstruction of public right." 50 O.S. §§ 5, 7. Third, Plaintiff asserts that 17 O.S. § 52, 27A O.S. § 1-3-101, and 52 O.S. § 139 merely delineate the respective rights, duties and responsibilities and scope of authority of the Corporation Commission vis-a-vis the other state agencies charged with environmental oversight, and the district courts of this state possess general jurisdiction, concurrent with

3. That section provides in pertinent part:

(1) Minimum surface casing requirements. Unless an alternate casing program is authorized by the Conservation Division or by an order of the Commission, suitable and sufficient surface casing shall be run and cemented from bottom to top with a minimum setting depth which is the greater of: (A) Ninety feet below the surface, or (B) Fifty feet below the base of treatable water.

. . . .

(3) Exceptions to (c)(1). Operators having wells producing hydrocarbons which were in compliance with the surface casing requirements at the time of completion shall not be required to comply with (1) of this subsection. . . .

4. This section is entitled "Corporation Commission—Jurisdiction, power and authority—Environmental jurisdiction of Department of Environmental Quality." Section (A)(1) provides: "Except as otherwise provided by this section, the Corporation Commission is hereby vested with exclusive jurisdiction, power and authority with reference to: a. the conservation of oil and gas, : . ., d. the exploration, drilling, development, production and operation of wells used in connection with the recovery, injection or disposal of mineral brines, . . ., [and] j. spills of deleterious substances associated with facilities and activities specified in paragraph 1 of this subsection or associated with other oil and gas extrac-tion facilities and activities, . . . ." Section (A)(2) provides: "The exclusive jurisdiction, power and authority of the Corporation Commission shall also extend to the construction, operation, maintenance, site remediation, closure and abandonment of the facilities and activities described in paragraph 1 of this subsection."

5. Section 1-3-101 is entitled, "State environmental agencies—Jurisdictional areas of environmental responsibilities," and § 1-3-101(E) contains language virtually identical to 17 O.S. § 52(A)(1) and (2), fn. 4, supra.

6. This section is entitled, "Jurisdiction, powers and authority of Corporation Commission and Department of Environmental Quality," and § 139(A) provides: "The Corporation Commission is vested with exclusive jurisdiction, power and authority, and it shall be its duty, to make and enforce such rules and orders governing and regulating the handling, storage and disposition of saltwater, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, and operating of oil and gas wells and brine wells within this state as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the state, and to otherwise carry out the purpose of this act." Section 139(B) contains language virtually identical to 17 O.S. § 52(A) and 27A O.S. § 1-3-101(E).

that of the Corporation Commission, an agency of limited jurisdiction, to direct abatement and remediation of a public nuisance attributable to mineral operations. 50 O.S. §§ 8,[7] 10,[8] 17[9]; 52 O.S. § 144.[10] So, says Plaintiff, because the weight of the clear and convincing evidence presented below amply demonstrates the Defendants' maintenance of continuing public nuisances, created by them or their predecessors in interest, the trial court did not err in directing them to remediate, and that until the trial court determines the reserved question concerning whether and/or to what extent Plaintiff should be required to contribute his settlement monies toward remediation, the issue of Plaintiff's contribution is not ripe for appellate determination.

## IV. STANDARD OF REVIEW

■■■ ¶ 17 "The award of a[n] ... injunction is a matter of equitable concern." *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, ¶ 4, 925 P.2d 546, 549. (Citations omitted.) "An injunction is an extraordinary remedy that should not be lightly granted[,] [and] [e]ntitlement to injunctive relief must be established in the trial court by clear and convincing evidence...." *Sharp*, 1996 OK 109, ¶ 5, 925 P.2d at 549. (Citations omitted.) "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or

conviction as to the truth of the allegation sought to be established." *Matter of C.G.*, 1981 OK 131, ¶ 17, 637 P.2d 66, 71, fn. 12. Ultimately:

.... Granting or denying injunctive relief is generally within the sound discretion of the trial court and a judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. In reviewing the matter, we are not bound by the findings or reasoning of a trial court, but we must consider, examine and weigh all the evidence. If the facts and law warrant, ..., this Court will affirm the judgment or order of the trial court if the correct ultimate conclusion was reached.

*Sharp*, 1996 OK 109, ¶ 4, 925 P.2d at 549. (Citations omitted.)

■■■ ¶ 18 However, questions concerning a trial court's subject matter jurisdiction and jurisdiction to enter the order at issue present questions of law, reviewed on appeal under the de novo standard. *Jackson v. Jackson*, 2002 OK 25, ¶ 2, 45 P.3d 418, 422; *White v. Adoption of Baby Boy D.*, 2000 OK 44, ¶ 2, 10 P.3d 212, 223. Under the de novo standard, we have "plenary, independent and non-deferential" authority to examine a trial court's legal rulings." *Jackson*, 2002 OK 25, ¶ 2, 45 P.3d at 422.

7. "The remedies against a public nuisance are: 1. Indictment or information, or, 2. A civil action, or, 3. Abatement."

8. "A private person may maintain an action for a public nuisance if it is specially injurious to himself but not otherwise."

9. "In cases where it is deemed impractical summarily to abate any such nuisance such city or town may bring suit in the district court of the county in which such nuisance is located, and it is hereby made the duty of the governing body of any such city or town, by the adoption of a resolution to direct the bringing of suit in the proper court for the purpose of abating any such nuisance. *The district court of the county in which any such nuisance exists or is maintained shall have jurisdiction of any such case and power to adjudge and determine any action* brought under the provisions hereof, *and* where it is adjudged that any such nuisance exists or is maintained and should be abated, *such court shall*

have the power and authority either by and through a commissioner appointed by such court, or otherwise, *to cause such nuisance to be abated* and to assess all the costs thereof, including the costs of suit, against the property on which such nuisance existed or is maintained, and to declare such costs a judgment against said property and order and direct the sale of said property for the purpose of satisfying said judgment and shall cause the same to be sold and proceeds thereof applied to the payment of the costs of abating any such nuisance." (Emphasis added.)

10. "The provisions of [52 O.S. § 139, et seq.] shall not repeal, but are supplemental to any and all other provisions of law having for their purpose the prevention of the pollution of surface or subsurface waters in this state; ..., and nothing in this act shall affect the operators' civil or criminal responsibility, or authorize the creation or perpetuation, o[f] a public or private nuisance,...."

## V. JURISDICTION

### A. Jurisdiction of the Corporation Commission

¶ 19 The Corporation Commission is a tribunal of limited jurisdiction and has only such authority as is expressly or by necessary implication conferred upon it by the Constitution and statutes of this state. Okla. Const., art. IX, § 18; *Merritt v. Corporation Commission,* 1968 OK 19, 438 P.2d 495. Consequently, the Corporation Commission has no jurisdiction to award damages or determine *private* disputes between an industry within its regulatory authority and an individual outside the limited powers granted by the Oklahoma constitution and statutes. *See, Samson Resources Co. v. Corporation Commission,* 1985 OK 31, ¶ 15, 702 P.2d 19, 23; *McDaniel v. Moyer,* 1983 OK 39, ¶ 15, 662 P.2d 309, 313; *Lear Petroleum Corp. v. Seneca Oil Co.,* 1979 OK 15, ¶ 13, 590 P.2d 670, 672; *Chicago R.I. & P. Ry. Co. v. State,* 1932 OK 467, ¶ 0(4), 12 P.2d 494. *See also, Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, ¶¶ 20–23, 687 P.2d 1049, 1053–1054.

### B. Statutory "Exclusive Jurisdiction" of the Corporation Commission—17 O.S. § 52, 27A O.S. § 1–3–101, and 52 O.S. § 139

#### 1. Historical Antecedents

¶ 20 By Laws 1917, c. 207, p. 385, now codified at 17 O.S. §§ 51, et seq., the Legislature empowered and authorized the Corporation Commission to create an oil and gas department under its jurisdiction and supervision. 17 O.S. § 51. The Legislature further directed that "[a]ll authority and duties now conferred upon the Corporation Commission or other departments of the state government in reference to the conservation of oil and gas and the drilling and operating of oil and gas wells and the construction and regulation of oil and gas pipelines are hereby conferred *exclusively* upon the Corporation Commission . . .," and authorized the Corporation Commission to "prescribe rules and regulations for the plugging of all abandoned oil and gas wells." 17 O.S. §§ 52, 53. In 1981, the Legislature directed the Corporation Commission to prescribe and promulgate rules to require the operator or leaseholder to remove surface trash, debris, operating equipment, and storage structures; to fill pits; and to grade disturbed land, upon abandonment of a well. 17 O.S. §§ 53.1, 53.2.

¶ 21 In 1955, the Oklahoma Legislature enacted § 139. As enacted, § 139 provided:

The Corporation Commission . . . is . . . vested with jurisdiction, power and authority, and it shall be its duty, to make and enforce such rules, regulations and orders governing and regulating the handling, storage and disposition of saltwater, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, refining and processing of oil and gas within the State of Oklahoma or operation of oil or gas wells in this state as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the state, and to otherwise carry out the purpose of this act. . . .

52 O.S.1961 § 139. In 1991, the Legislature designated the quoted language as section A, made minor linguistic changes, and added section B, granting the Corporation Commission power to take "whatever necessary action, without notice and hearing, including the expenditure of monies from the Corporation Commission revolving fund," "[f]or the purpose of immediately responding to emergency situations having potentially critical environmental impact and resulting from activities within its jurisdiction." 52 O.S.1991 § 139.

¶ 22 In 1992, the Legislature enacted the Oklahoma Environmental Quality Act, 27A O.S. Supp.1992 §§ 1, et seq. (OEQA). The OEQA assigned "jurisdictional areas of environmental responsibilities" between the Departments of Agriculture, Environmental Quality, Labor, Mines, Public Safety, Wildlife Conservation, Civil Emergency Management, the Oklahoma Water Resources Board, the Conservation Commission, and the Corporation Commission. 27A O.S. § 6.

#### 2. Amendments of 1993

¶ 23 In 1993, the Legislature substantially rewrote the OEQA. In the OEQA, the Legis-

lature renumbered and amended the previous sections, and brought into the OEQA the provisions of the Oklahoma Controlled Industrial Waste Management Act, 63 O.S. §§ 1–2001, et seq., as a part of the Oklahoma Environmental Code, 27A O.S. Supp.1993 § 2–1–101, et seq. In Article III of the OEQA, 27A O.S. § 1–3–101, the Legislature redefined the "jurisdictional areas of environmental responsibilities" of state agencies previously set out in § 6, and in § 1–3–103(E), assigned to the Corporation Commission "exclusive jurisdiction" to regulate and control fourteen specific areas of mineral conservation, exploration, drilling, development, production, processing, transportation, and storage, including "spills of deleterious substances associated with facilities and activities specified," and extending the "exclusive jurisdiction, power and authority of the Corporation Commission ... to the construction, operation, maintenance, *site remediation,* closure and abandonment of the facilities and activities described." 27A O.S. § 1–3–103(E)(1), (2). (Emphasis added.)

¶ 24 In the same session, the Legislature also amended 17 O.S. § 52 and 52 O.S. § 139. In 52 O.S. § 139 as amended, the Legislature granted the Corporation Commission *"exclusive* jurisdiction, power and authority" in the previously delineated areas. 52 O.S. Supp. 1993 § 139(A). (Emphasis added.) In both 17 O.S. § 52(A) and 52 O.S. § 139(B), employing virtually identical language to 27A O.S. § 1–3–101 of the OEQA, the Legislature granted the Corporation Commission *"exclusive* jurisdiction, power and authority" to regulate and control eleven specific areas of mineral conservation, exploration, drilling, development, production, processing, transportation, and storage, including "spills of deleterious substances associated with facilities and activities specified," and extending the *"exclusive* jurisdiction, power and authority of the Corporation Commission ... to the construction, operation, maintenance, *site remediation,* closure and abandonment of the facilities and activities described." 17 O.S. Supp.1993 § 52(A)(1), (2); 52 O.S. Supp.1993

§ 139(B)(1), (2). (Emphasis added.) In both 17 O.S. § 52(A)(3), (6), (7) and (8), and 52 O.S. § 139(B)(3), (6), (7), and (8), again employing almost identical language to the OEQA, the Legislature assigned to the Department of Environment Quality *"sole* jurisdiction over ... point source discharges of pollutants" from facilities within its regulatory authority. (Emphasis added.)

3. Application of the "Exclusive Jurisdiction" Provisions of 17 O.S. § 52, 27A O.S. § 1–3–101, and 52 O.S. § 139

¶ 25 The Oklahoma Supreme Court has recognized that 27A O.S. § 1–3–101 "assigns jurisdictional areas of responsibility to the state's environmental agencies," and particularly, between the Corporation Commission, the Oklahoma Department of Environmental Quality, and the Department of Agriculture. *Messer–Bowers Co., Inc. v. State ex rel. Oklahoma Water Resources Bd.,* 2000 OK 54, ¶ 18, 8 P.3d 877, 882. The Oklahoma Supreme Court has also recognized that 17 O.S. § 52, read together with 52 O.S. § 139 and predecessor provisions to the OEQA, 27A O.S. § 2–6–101, et seq.,[11] and 27A O.S. 2–7–101, et seq.,[12] assign the jurisdictional areas of authority as between the Corporation Commission, the Oklahoma Water Resources Board, and/or, what was then known as the Pollution Control Coordinating Board. *Matador Pipelines, Inc. v. Oklahoma Water Resources Bd.,* 1987 OK 65, 742 P.2d 15; *State ex rel. Pollution Control Coordinating Bd. v. Oklahoma Corp. Com'n,* 1983 OK 3, 660 P.2d 1042.

¶ 26 As between the Corporation Commission and any other state agency with responsibility for maintaining environmental quality, it is thus clear that "[o]nly the Corporation Commission is given 'exclusive' environmental jurisdiction in the area of oil and gas," including the "exclusive jurisdiction, power and authority governing the disposition of deleterious substances incidental to petroleum production and to promulgate rules and regulations to prevent pollution of

---

11. 82 O.S.1981, §§ 926.1, et seq., renumbered as 27A O.S. § 2–6–101, et seq., by Laws 1993, c. 145, § 359, eff. July 1, 1993.

12. 63 O.S. Supp.1982 §§ 1–2001, et seq., renumbered as 27A, § 2–7–101, et seq., by Laws 1993, c. 145, § 359, eff. July 1, 1993.

the surface and subsurface waters in the state." *Messer–Bowers Co., Inc.,* 2000 OK 54, ¶ 18, 8 P.3d at 882; *State ex rel. Pollution Control Coordinating Bd.,* 1983 OK 3, ¶ 7, 660 P.2d at 1044. *See also, Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 937–938 (10th Cir.(Okl.) 2001).

### C. Jurisdiction of the District Courts— Nuisance Damages

■■■ ¶ 27 Clearly, and in keeping with the limited jurisdiction of the Corporation Commission, the Oklahoma Supreme Court has recognized that the district courts of this state possess the authority to determine private rights' disputes arising from mineral production. *Tenneco Oil Co.,* 1984 OK 52, ¶¶ 20–23, 687 P.2d at 1053–54. Indeed; there seems little doubt that only the district courts of this state possess jurisdiction to award nuisance or negligence damages for pollution and cleanup. *Union Texas Petroleum Corp. v. Jackson,* 1995 OK CIV APP 63, 909 P.2d 131; *Tenneco Oil Co. v. Allen,* 1973 OK 129, 515 P.2d 1391; *Sheridan Oil Co. v. Wall,* 1940 OK 225, 103 P.2d 507. *See also, Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373 (10th Cir.(Okl.) 1989); *Greyhound Leasing & Financial Corporation v. Joiner City Unit,* 444 F.2d 439 (10th Cir.(Okl.) 1971). And, it appears that a party may pursue a damages claim in district court concurrently with a remediation action before the Corporation Commission. *Schneberger v. Apache Corp.,* 1994 OK 117, 890 P.2d 847; *Union Texas Petroleum Corp.,* 1995 OK CIV APP 63, ¶ 19, 909 P.2d at 139. Further, a successor operator may be held liable for maintaining a pollution-related nuisance created by a predecessor. *Union Texas Petroleum Corp.,* 1995 OK CIV APP 63, ¶ 26, 909 P.2d at 141.

### D. Jurisdiction of the Courts to Order Remediation

■■ ¶ 28 As the Tenth Circuit has noted, however, "Oklahoma courts have not yet decided that a district court lacks all jurisdiction to order a cleanup when the [Corporation Commission] has not yet exercised its jurisdiction." *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 937–938 (10th Cir.(Okl.) 2001). On consideration of the above-cited authorities, we hold the district courts of Oklahoma possess jurisdiction to order cleanup.

¶ 29 First, the Legislature has statutorily defined "public nuisance" and "private nuisance," and prescribes available remedies for both a "public nuisance" and "private nuisance" as including "abatement." 50 O.S. §§ 2,[13] 3,[14] 8,[15] 13.[16] There can be little doubt that a district court possesses jurisdiction and authority to direct abatement of a "public nuisance." *See, e.g., Simons v. Fahnestock,* 1938 OK 264, ¶ 0(2), 78 P.2d 388.[17] The pollution of "any air, land or waters of this state" is statutorily defined as a public nuisance. 27A O.S. §§ 2–6–102, 2–6–105. And, over seventy years ago, the Oklahoma Supreme Court affirmed the judgment of the trial court to grant a mandatory injunction "commanding the defendants to bury the pipe lines and to remove the pipe, structures, trash, and odds and ends not necessary to the production of oil and gas on the property in controversy." *See, Schlegel v. Kinzie,* 1932 OK 243, ¶ 2, 12 P.2d 223, 224.

¶ 30 Second, Oklahoma oil and gas conservation law specifically recognizes the cumulative nature of the various statutes "having for their purpose the prevention of the pollution of surface or subsurface waters in this state," and establishing mineral "operators' civil or criminal responsibility" for the creation or maintenance of a public nuisance.

---

**13.** "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

**14.** "Every nuisance not included in the definition of the last section is private." (Footnote omitted.)

**15.** See, fn. 6, supra.

**16.** "The remedies against a private nuisance are: 1. A civil action; or, 2. Abatement."

**17.** "As a general rule, courts of equity have power to give relief against either public or private nuisance by compelling the abatement or restraining the continuance of the existing nuisance, or enjoining the commission or establishment of a contemplated nuisance."

52 O.S. § 144.[18] The appellate courts have either tacitly or expressly approved pursuit of a district court remedy concurrently with an action before the Corporation Commission. *Schneberger,* 1994 OK 117, ¶ 2, 890 P.2d at 849; *Union Texas Petroleum Corp.,* 1995 OK CIV APP 63, ¶ 19, 909 P.2d at 139. The trial court specifically authorized such a course of action in the present case.

¶ 31 Third, the Oklahoma Supreme Court has specifically recognized that 17 O.S. § 52, 27A O.S. § 1–3–101, and 52 O.S. § 139 assign the "jurisdictional areas of responsibility to the state's environmental agencies." *Messer–Bowers Co., Inc.,* 2000 OK 54, ¶ 18, 8 P.3d at 882; *State ex rel. Pollution Control Coordinating Bd.,* 1983 OK 3, ¶ 7, 660 P.2d at 1044. To read the cited sections as depriving the district court of its "unlimited original jurisdiction of all justiciable matters" raises some substantial constitutional questions, and, absent a clearer expression of the Legislature's intent to divest the district court of its general jurisdiction, we must adopt a construction of the cited sections which frees them of constitutional infirmity. Okl. Const., art. VII, § 7(a)[19]; *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, ¶ 18, 833 P.2d 1218, 1229.[20]

## VI.  Evidentiary Challenges

### A.  Burden of Proof

¶ 32 In their first proposition, Defendants complain Plaintiff did not carry his burden of proof by clear and convincing evidence demonstrating his entitlement to injunctive relief. Here, Defendants assert the trial court ignored their "significant, undisputed evidence" attributing the oil and saltwater contamination of Plaintiff's property to naturally occurring processes, in existence prior to the first mineral exploration in the area. According to Defendants, the clear weight of the evidence and testimony, "much of it undisputed," showed: no public nuisance created or maintained by them; no threat of injury to Plaintiff's property "from the condi-

tions existing thereon"; their compliance with Corporation Commission rule, O.A.C. 165:10–3–4(c), concerning surface casing requirements; and, Plaintiff's retention of $4.3 million in settlement monies, intended, but not expended, for abatement of the existing public nuisance on Plaintiff's property.

¶ 33 As we have noted, Plaintiff testified concerning the physical condition of the surface estate, his observation of Walters pumping salt brine into one or more open well bores, and his opinion that much of the damage to his surface estate and subsurface aquifers was directly attributable to the mineral operations by Frank Walters, Defendants' immediate predecessor in interest. Plaintiff offered the opinions of two experts, both attributing the surface and subsurface pollution of his property to the mineral operations of Defendants or their predecessors.

¶ 34 We have also noted that Defendants offered expert and other testimony and evidence attributing the pollution of Plaintiff's property to naturally occurring conditions present prior to Plaintiff's acquisition, and arguably demonstrating their operation of wells in compliance with Corporation Commission regulation. Defendants also adduced evidence of Plaintiff's receipt of substantial sums in settlement of his dismissed damage claims against the other defendants.

¶ 35 Upon consideration of the testimony and evidence, and after a personal inspection of the property, the trial court concluded "Defendants in this case have created and/or maintained a continuing public nuisance on the subsisting oil and gas leases on Plaintiff's property." We have considered and examined the evidence and testimony adduced by Plaintiff, and find Plaintiff's proof of sufficient quality and measure to "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established," i.e., clear and convincing. *Matter of C.G.,* 1981 OK 131, ¶ 17, 637 P.2d at 71, fn. 12. We have further considered, examined and weighed all the

---

18.  Footnote 10, supra.

19.  "... The District Court shall have unlimited original jurisdiction of all justiciable matters, ..."

20.  "When a statute is susceptible to more than one construction, it must be given that interpretation which frees it from constitutional doubt rather than one that would make it fraught with fundamental-law infirmities."

evidence adduced by both parties, and, considering all the evidence, conclude the trial court's judgment is neither clearly against the weight of the evidence, nor affected by an abuse of discretion. *Sharp*, 1996 OK 109, ¶ 4, 925 P.2d at 549.

¶ 36 Furthermore, in Oklahoma nuisance law, an order of abatement does not preclude an award of damages. 50 O.S. § 6.[21] The fact that Plaintiff has, in fact, received money in settlement of his damage claims against the dismissed defendants does not, therefore, affect his entitlement to injunctive relief. *But see, Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1339 (4th Cir.(S.C.) 1993),[22] and *Gopher Oil Company v. Union Oil Co.*, 955 F.2d 519, 528–529 (8th Cir.(Minn.) 1992),[23] cited in, L. Mark Walker and Dale E. Cottingham, *Money Damages Versus Cleanup In Pollution Cases*, 48 Ok.L.Rev. 79, 87 (1995). Moreover, the trial court has yet to determine whether and/or to what extent Plaintiff should be required to contribute his settlement monies to the remediation of his polluted property, and we will not address that issue prior to the trial court's determination.

### B. Sufficiency of the Evidence

¶ 37 In their second, third and fourth propositions, Defendants assert Plaintiff did not demonstrate a basis for issuance of a mandatory injunction against them. In these propositions, Defendants argue the evidence and testimony demonstrated no basis for injunctive relief against them because the evidence

showed: (1) Plaintiff had accepted a settlement for damages due to one minimal spill at a well operated by them; (2) all wells operated by them met the surface casing requirements at the time of completion in accord with Corporation Commission rule, O.A.C. 165:10–3–4(c); (3) the physical impossibility of contamination of the subsurface aquifers by salt water migrating *up* any well bore due to insufficient hydrologic pressure; (4) no injection of salt water into a well bore by anyone other than Walters, and certainly not by any of the Defendants; and, (5) Plaintiff's unreasonable delay in seeking relief after his acquisition of the property, resulting in the inequitable imposition on them of liability for the acts and omissions of both their immediate and remote predecessors in interest.

¶ 38 As to Plaintiff's acceptance of a settlement on one surface damage claim against Defendants, we find no evidence that the settlement of that solitary surface damage claim was intended to preclude assertion of other surface damage claims. We therefore cannot say Plaintiff's acceptance of a settlement on one surface damage claim precludes issuance of injunctive relief to compel remediation.

¶ 39 As to the allegation of the operation of wells in compliance with, or within the exceptions to, the surface casing requirements of O.A.C. 165:10–3–4(c)(1) and (3), section 10–3–4(c)(7)(I)(ii) requires an operator to promptly report the "discovery of a treatable water formation below the shoe of the sur-

21. "The abatement of a nuisance does not prejudice the right of any person to recover damages for its past existence."

22. "... The district court in this case should withhold the entry of judgment on the state law claim until after the CERCLA claims are resolved. The district court would then be in an appropriate position to determine the appropriate damage award for the negligent nondisclosure, 'taking into account the projected value of the site after the projected cleanup and any other matters appropriate to the final assessment of [negligent nondisclosure] damages.' In determining the value after cleanup, the district court would be free to employ expert testimony presented by the parties or called by the court. Once accomplished, the district court can enter judgment on the negligent nondisclosure claim." (Citations omitted.)

23. "... The jury awarded [fraud] damages based upon the value of the site at the time of purchase, $0 because of the contamination. The district court considered that assessment to be erroneous, in light of the effect that the cleanup activities, dictated by CERCLA and MERLA, will have in increasing the value of the property. An assessment of value at the time of purchase would allow a windfall to Gopher because it would receive the full purchase price of the site and also retain title to the decontaminated piece of land.... [W]e remand for calculation of the fraud damages to which Gopher is entitled, taking into account the projected value of the site after the projected cleanup and any other matters appropriate to the final assessment of fraud damages ..."

face casing" to the Corporation Commission, and section 10–3–4(n) requires "the operator [to] take such measures designated by the Director of Conservation or ordered by the Commission to protect any treatable water-bearing formation" "[w]hen it has been determined that a treatable water-bearing formation has not been properly cased and cemented." Reading these provisions together, it would thus appear that the operation of a well in compliance with the surface casing requirements at the time of completion does not preclude issuance of a subsequent order requiring additional casing and cementing of the well to protect treatable water-producing formations from contamination.

¶ 40 As to the allegation of the physical impossibility of the salt water pollution of treatable or fresh water horizons from below, we view this challenge as another attack on the weight of the evidence. We have considered, examined and weighed the evidence, and again hold the trial court's judgment is neither clearly against the weight of the evidence, nor affected by an abuse of discretion.

¶ 41 As to the allegations that Plaintiff wholly failed to prove the injection of salt water into a well bore by anyone other than Walters, not by any of the Defendants, and that Plaintiff's unreasonable delay results in the inequitable imposition of liability upon them, we have recognized statutory authority holding successors in interest liable for the maintenance of a public nuisance created by a predecessor without regard to any delay in asserting a right to relief. 50 O.S. §§ 5, 7. We have also acknowledged the testimony of Plaintiff's experts attributing the contamination of treatable and/or fresh water strata underlying Plaintiff's property directly to Defendants' operation of insufficiently cased and cemented wells.

## VII. Conclusion

¶ 42 To summarize, we first hold the district courts of Oklahoma possess jurisdiction to order remediation or cleanup of pollution attributable to mineral operations. We further hold the trial court judgment is neither contrary to the clear weight of the evidence, nor affected by an abuse of discretion. The order of the trial court is therefore AFFIRMED.

HANSEN, J., and ADAMS, J. (sitting by designation), concur.