IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
SEPTEMBER 15, 2009 Session

## BOBBY STEVE SIMMONS and JEANNIE L. SIMMONS v. CITY OF MURFREESBORO, ET AL.

### Direct Appeal from the Circuit Court for Rutherford County
Nos. 50108, 50109    Robert E. Corlew, Judge

_____

### No. M2008-00868-COA-R3-CV - Filed December 9, 2009

_____

Appellants granted a sewer line easement to the City. The City hired a sub-contractor to install the sewer line and to restore the property following construction. Appellants, who were dissatisfied with the sub-contractor's restoration, filed suit against the City and the sub-contractor. The sub-contractor subsequently went out of business, and the trial court entered a judgment against the City for $13,070.00, representing the value of Appellants' land plus the cost to repair a fence. Appellants appeal, claiming the proper measure of damages is the cost to restore their property–$137,779.62. On appeal, the City contends that Appellants may not sue the City, that Appellants breached the contract by refusing the sub-contractor access to their property, and that the trial court's award should be reduced by $132.00. The proper measure of damages in this case is the lesser of the cost to restore Appellants' property or the difference in reasonable market value of the premises immediately prior to and immediately after the injury. Although neither party presented evidence regarding the property's diminished value, we find that the trial court considered the appropriate factors in setting the amount of damages. Thus, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY,J., joined.

D. Russell Thomas, Herbert M. Schaltegger, Murfreesboro, for Appellants

Richard W. Rucker, Murfreesboro, TN, for Appellee, City of Murfreesboro

## OPINION

### I. FACTS & PROCEDURAL HISTORY

The initial facts of this case are generally undisputed. In September of 2000, Bobby Steve Simmons and Jeannie Simmons ("Appellants") granted an easement to the Appellee City of Murfreesboro ("City") for the purpose of laying a sanitary sewer line across their property. The City contracted with Bolden Pipe Construction Company ("Bolden")[1] to excavate, install the sewer line, and restore the property following construction.

Appellants brought suit against Bolden and the City,[2] alleging that construction was not performed in a workmanlike manner. Specifically, Appellants alleged that during construction, large amounts of high-quality topsoil were removed from their property and replaced with "shot rock," that the contour of their land was changed adversely affecting an area already subject to flooding, that soil erosion silt fences were not replaced, that the soil was compacted adversely affecting vegetation growth, that blasted rock which was scattered beyond the easement was not removed, that several trees outside the easement were removed, that fencing was damaged and improperly replaced, and that seeding was not performed to contract specifications. The City, however, maintained that Bolden did not remove topsoil from Appellants' property and that a *reasonable* restoration of Appellants' property was made.[3] The City claimed that "two unexpected, very heavy rains . . . washed out the efforts at restoring the surface [of Appellants' property]" and subsequently, that Appellants thwarted Bolden's attempt to continue surface improvements by refusing Bolden access to the property.

Following a bench trial, the chancellor found that Bolden "was negligent in the construction and restoration of the sewer line, and that the City bears that burden jointly[.]" Despite Appellants' claim for restoration costs of $137,779.62, the chancellor limited Appellants' recovery to $13,070.00, representing the value of the land plus the cost to repair a fence. Appellants timely appealed.

### II. ISSUES PRESENTED

Appellants present the following issue for review, summarized as follows:

1. Whether the trial court erred in limiting damages to the value of their property plus the cost to repair a fence, rather than awarding restoration costs.

---

[1] Bolden Construction Company is not a party to this appeal as it went out of business at the "end" of 2003.

[2] Although initially sued separately, the cases against Bolden and the City were consolidated.

[3] Neither Bolden's nor the City's answer is included in the record before us.

Additionally, the City presents the following issues for our review, summarized as follows:

1.      Whether the trial court erred in failing to hold that Appellants frustrated the purpose of the contract by refusing to grant access to their property, thus relieving the City of its obligation to fulfill the contract;

2.      Whether the City should be dismissed because Appellants are not a third party beneficiary of the contract between the City and Bolden;

3.      Whether the City should be dismissed because it is immune from suits for negligent inspection of property; and

4.      Whether the judgment should be reduced by $132.

For the following reasons, we affirm the decision of the circuit court.


### III.  STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them.  Tenn. R. App. P. 13(d) (2008); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect.  *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).  When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies.  *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)).  We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary.  *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted).  We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness.  *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).


### IV.  DISCUSSION

#### A.    The City is a Proper Defendant

We must first address the threshold issue of whether the City may be properly sued by Appellants.  The City contends first that because Appellants are not third party beneficiaries to the contract between the City and Bolden, they are not entitled to enforce its terms.  Alternatively, the

City argues that if Appellants are third party beneficiaries, they may enforce the contract only against Bolden.

We need not determine whether Appellants are third party beneficiaries of the contract between the City and Bolden, or against whom they may enforce such provisions. The "Sanitary Sewer Easement" executed by Appellants on September 15, 2000, and recorded on September 19, 2000, states as follows:

> By its acceptance and delivery of this instrument **CITY OF MURFREESBORO** covenants and binds itself, its successors and assigns to repair and restore all fences, if any, that may be required to be cut or to be temporarily removed in, and to clean and remove all surplus dirt, rock and other debris, caused by or resulting from the locating, laying, constructing, installing, servicing, repairing, and maintaining of the said sanity sewer or sewer line, including its fittings, appliances, and appurtenances thereto, and also insofar as reasonably practicable, to fill, grade and restore the surface of the land, as related to the construction of the sanitary sewer line.

The easement is a contract which Appellants, as parties to such, are entitled to enforce against the City. This issue is without merit.

Next, the City contends that it is immune from Appellants' suit pursuant to the Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated section 29-20-101, et seq. The GTLA removes governmental immunity "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment" except for injuries arising out of, among other things, "a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property." **Tenn. Code Ann. § 29-20-205**. The City argues that "[s]ince the only possible City action on the construction site would be inspection, this is the only activity in which negligence could be found on the part of the City[,]" and thus "the Judge should have dismissed the City from this suit."

We disagree. The trial court made no finding that its judgment against the City was based on negligent inspection. Although the trial court's basis for imposing liability upon the City is unclear, we find that such basis was impliedly either negligent *supervision* or breach of contract, actions for which the GTLA does not grant governmental immunity.[4] *See* **Tenn. Code Ann. § 29-20-205;** *Van Winkle v. City of Lavergne*, No. M2000-01784-COA-R3-CV, 2001 WL 1141349, at *3 (Tenn. Ct. App. Sept. 27, 2001).

---

[4] In their "Complaint," Appellants alleged two grounds for recovery: failure to supervise and breach of contract. In rendering its judgment, the trial court relied heavily upon *Peevyhouse v. Garland Coal & Mining Co.*, 382 P.2d 109 (Okla. 1962), specifically noting that *Peevyhouse* involved a "landowner who sued for damages for breach of contract."

## B. *Access to Appellants' Property*

Having found the City to be a proper defendant, we next address whether Appellant's conduct excused the City from performing under the contract. The City argues that by refusing to grant Bolden permission to access his property, Appellant materially breached the contract, relieving the City of any further obligations thereunder.

In their "Complaint," Appellants alleged that following the installation of the sewer line in "spring and summer of 2001[,]" Bolden failed to restore their property to its original condition. In an August 3, 2001 letter to Joe Kirchner, the director of the Murfreesboro Water and Sewer Department, Appellant outlined the "problems" with Bolden's initial attempt at restoration, including altered land contour, removal of topsoil and trees, compacted soil, replacement of soil with rocks, damage to a fence line, and scattered rock. A letter from the project engineer, dated September 21, 2001, was forwarded to Appellant stating that some of the problems had since been addressed and denying that certain problems existed. A subsequent letter was sent to Appellant on November 27, 2001, acknowledging that Appellant's concern regarding buried rock had not been addressed, and seeking access to his property for removal of such.

A March 2002 letter from the City's project engineer to Bolden requested a schedule to "rework" Appellants' property, noting that "the grassing of these properties was not successful last fall, and as a result areas have experienced washing, exposing rocks and gravel." The City requested access to Appellants' property; however, Appellants' reply stated they had "reservations with allowing the same contractor who removed topsoil not in the permanent easement to be allowed back on the property[,]" and that they feared an inadequate restoration "would continue to lessen the value and use of [their] property." They ensured the City that they did not intend "to prevent access to the property or to prevent a resolution[,]" but they sought an "understanding that w[ould] insure a proper restoration and prevent a repeat of the situation that now exists continuing to cause the city, the contractor, and [themselves] additional expense." In a subsequent letter to the City, Appellants requested to view correspondence between the contractor, the department, the engineers and the field inspectors regarding the property and the instructions given regarding the restoration in order "to make an informed decision on the restoration of the property." Appellants acquiesced, and allowed access to their property in a September 26, 2002 letter to the City, but they restated their "significant concern" regarding the "potential damage which may result by [the City's] contractor re-entering the property and once again performing improper repairs."

Bolden's second attempt at restoration was unsatisfactory to Appellants, who explained in a May 23, 2003 letter to the City that "[a]s expected, the contractor has repeated the same inadequate attempt at grade work with no replacement of lost top soil, elevations not re-established, no rock removed, the fence on the . . . boundary completely washed out, and no repairs made to the area of removed soil in the temporary easement." Appellants explained that "the delay in granting the permission on the right of way was the result of the City of Murfreesboro refusing to come to an agreement and to declare their intention for the restoration of the property." The City responded by stating that its contractor "stood ready" to fill low areas, remove surface rock, replace geotechnical

matting, and reseed the easement area. However, Appellant responded in an October 21, 2003 letter as follows:

> My position continues to be that the city neglected to make the proper restoration initially. Since that time erosion that has occurred has left the property in an even more declining state. Their second attempt at restoration was no better than the first. . . .
>
> Again I request that the City of Murfreesboro comply with their agreement to restore the property.

At trial, construction superintendent Kevin Griffin testified that on October 21, 2003, during his only visit to Appellants' property, a seemingly "agitated" and "very seriously upset" Appellant Steve Simmons told Mr. Griffin that he did not want him on his property. Mr. Griffin alleged that Appellant disappeared and then returned on a tractor carrying what appeared to be a 9mm pistol on his hip. Mr. Griffin claims that Appellant did not "pull the gun" on him, but that he did keep his hand on it while telling Mr. Griffin that if he valued his safety he would leave the property immediately.[5] Appellant Simmons denied disallowing the performance of work on his property on the date in question, as well as Mr. Griffin's claims that he left the scene and returned with a weapon.

We find that Appellant Simmons did not prevent access to his property such that the City was unable to effect a cure, but instead we find that he was merely seeking "reasonable assurances" that in "restoring" his property, no further damage would be done.[6] Because Appellant Simmons' actions do not constitute a breach of contract, the City was not relieved of its obligation to restore his property.

### C.   Proper Measure of Damages

Having found that the City is a proper defendant in this case and that it is not relieved from the obligations of its contract with Appellants, we now consider the proper measure of damages owed to Appellants. Whether the trial court utilized the proper measure of damages is a question of law which we review de novo. *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005); *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998)). "The amount of damages awarded, however,

---

[5] Included in the record are photographs Mr. Griffin allegedly took on October 21, 2003, of Appellants Simmons, who appears to be smiling. We note that an unidentifiable object is attached to his side.

[6] To determine whether a breach of contract is material, thus allowing the non-breaching party to avoid performance, courts should consider among other things, "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances[.]" *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV, M2007-02861-COA-R3-CV, 2009 WL 723540, at *11 (Tenn. Ct. App. Mar. 28, 2009) (citing *Adams TV of Memphis, Inc. v. ComCorp of Tenn.*, 969 S.W.2d 917, 921 (Tenn. Ct. App. 1997)).

is a question of fact so long as the amount awarded is within the limits set by the law." *Id.* (citing *Beaty*, 15 S.W.3d at 829).

In limiting Appellants' award to the value of their land plus the cost to repair a fence, the trial court relied upon the Oklahoma case of *Peevyhouse v. Garland Coal & Mining Co.*, 382 P.2d 109 (Okla. 1962). In *Peevyhouse*, the plaintiffs, who leased their farmland for strip mining, alleged that the defendants failed to restore their land as contractually required. **382 P.2d at 111**. The evidence revealed a cost of $29,000 to restore the plaintiffs' land, whereas non-restoration had decreased their land's value by only $300. *Id.* at 112. The Oklahoma Supreme Court acknowledged that the measure of damages in breach of contract cases "is ordinarily the reasonable cost of performance of the work[,]" but awarded the plaintiffs only the diminution in their land's value, both because restoration was incidental to the contract's main purpose, and because the restoration cost was "grossly disproportionate" to its economic benefit. *Id.* at 114.

As we stated above, the basis for the trial court's judgment is unclear. However, we find irrelevant the court's basis, as the measure of damages is the same under either a negligence or breach of contract theory. The proper measure of damages for injury to real property is the lesser of either (1) the difference in reasonable market value of the premises immediately prior to and immediately after the injury, or (2) the cost of repairing the injury. *Fuller v. Orkin Exterminating Co., Inc.*, 545 S.W.2d 103, 108-09 (Tenn. Ct. App. 1975) (awarding the cost to repair in a breach of contract action where such cost was less than the decreased fair market value);[7] *see also Carson v. Waste Connections of Tennessee, Inc.*, No. W2006-02019-COA-R3-CV, 2007 WL 1227470, at *6 (Tenn. Ct. App. Apr. 27, 2007) (acknowledging that in a negligence action, the proper measure of damages to real property is the lesser of the cost to repair or the decreased value). However, in calculating the property's diminished value, the court may consider reasonable restoration costs. *Id.* at 108.

In this case, Appellants presented evidence of restoration costs totaling $137,779.62, and real estate appraiser Gregory Peck valued the easement area, as of the easement's execution, at $10,868.00 and rounded "up to 11,000.00." Neither party has cited any evidence, nor can we find any within the lengthy record, regarding the fair market value of the easement area following the construction of the sewer line. "Because there was no proof regarding the diminution in value, the trial court could properly consider the proportionality of the cost of repair to the market value of the affected property." *Conatser v. Ball*, No. M1999-00583-COA-R3-CV, 2001 WL 873457, at *12 (Tenn. Ct. App. Aug. 3, 2001). "In determining an appropriate and reasonable amount of damages, the court was entitled to consider the nature of the injury, the portion of the land damaged and the effect of damage of that portion on the entire tract, the market value of the entire tract or the portion

---

[7] This Court stated in *Simmons v. Turner Constr. Co.*, No. 03-A01-9304-CH-00174, 1993 WL 317636, at *3 (Tenn. Ct. App. Aug. 23, 1993), that "*Fuller* indicates that the damage to realty rule[, allowing recovery of the lesser of the cost to repair or the diminution in value,] also applies in cases where plaintiffs sue under contract theories of recovery."

damaged, and the costs of repair." *Id.* In considering those factors, the trial court assessed damages at $13,070.00. Presumably, the trial court limited its award because of the disproportionality of the estimated cost of repairs to the market value of the tract. We find no error in the trial court's award. Specifically, we find the City's suggestion that the award was "$132 too much" without merit. The trial court's utilization of the "rounded" appraisal was, at most, harmless error. The judgment of the trial court is affirmed.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to equally to Appellants, Bobby Steve Simmons and Jeannie L. Simmons, and their surety, and Appellee, the City of Murfreesboro, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.